———o———

THE STATE OF MISSOURI, Respondent, *vs.* VIC. DEBAR, Appellant.

1. *St. Louis, city of—Bawdy houses—Amendment to charter—Repealing act, March 30, 1871, did not revive general statute.*—The amendment to the city charter of St. Louis, approved March 4, 1870, authorizing the corporation to "regulate or suppress" bawdy houses, operated a repeal within the city limits, of the general law which prohibits the keeping of such houses. (State vs. Clark, 54 Mo., 33 affirmed.) The amendment of March 30, 1874, which repealed the former amendment, did not thereby revive the general statute in the city of St. Louis.

2. *Special act will prevail over inconsistent general law.*—If a special provision, applicable to a particular object or locality, be inconsistent with a general law, the former must prevail. And this rule applies to a comparison of duly authorized municipal ordinances with State statutes; since both are from a common source of authority.

3. *St. Louis, city of—Charter—Limitation that ordinances shall not be inconsistent with general law, yields to special provision.*—The charter limitation upon the power to pass ordinances, that they shall be "not inconsistent with any law of the State," being general, must yield to the special and particular provision which authorizes the regulation of bawdy houses, in contravention of the State law.

4. *Statute, construction of—Repeal by implication—Doctrine, applications of.*—While it is true that repeals by implication should not be favored, yet the proper application of this doctrine appears where the effort is to annul a special provision by implication of a general law.

5. *St. Louis, city of—Charter—Power to suppress bawdy houses.*—The city corporation of St. Louis has full power, under its amended charter, to suppress bawdy houses.

*Appeal from St. Louis Court of Criminal Correction.*

*Joseph G. Lodge with N. C. Claiborne,* for Appellant.

I. When a law repealing a former clause or provision shall be itself repealed, it shall not be construed to revive such former law, clause or provision, unless it be so expressly provided. (Wagn. Stat., 894, § 3.)

II. The charter of the city of St. Louis of 1870 was a law repealing a general law of the State (concerning bawdy houses, and under which defendant was prosecuted below) within the city of St. Louis. (State vs. Clark, 54 Mo., 33.) And said charter of 1870 was itself repealed in 1874, without, however, expressly reviving the general law formerly repealed, within said city.

*M. W. Hogan,* for Respondent.

I. The general statute was not repealed; it was only suspended in St. Louis during the existence of what was known as the Social Evil Ordinance, which tolerated bawdy houses within said city, under certain rules and regulations prescribed by the city council. And now that the power to regulate such houses has been taken away from the council, the suspension of the general statute in regard to them, within the corporate limits of St. Louis, is removed, and the keepers of bawdy houses, according to the provisions of said statute, can be punished here as well as in other parts of the State. (City of Hannibal vs. Guyott, 18 Mo., 520.)

LEWIS, Judge, delivered the opinion of the court.

. The defendant was prosecuted by information and convicted under the general statute, which prohibits the keeping of bawdy houses. (Wagn. Stat., 502, § 19.) Her appeal to this court is based upon an assumption that the statute is not operative within the limits of the city of St. Louis.

The act amending the city charter, approved March 4, 1870, authorized the passage of ordinances, not inconsistent with any law of the State, for a great variety of purposes, and

among them "to regulate or suppress bawdy or disorderly houses, houses of ill-fame or of assignation." The amendment enacted March 30, 1874, repealed the terms of this special authority, substituting the words, "to suppress (but not license) bawdy or disorderly houses, etc."

The question before us must be answered by an application to these charter amendments of the following statutory provision, (Wagn. Stat., 894, § 3): "When a law, repealing a former law, clause or provision, shall be itself repealed, it shall not be construed to revive such former law, clause or provision, unless it be otherwise expressly provided."

If, within the meaning of this provision, the charter amendment of March 4, 1870, operated a repeal of the general law, in its application to the city of St. Louis, then the repeal of that amendment by the enactment of March, 30, 1874, did not revive the general law, but left it still inoperative within the same city limits.  And in that case, the defendant was wrongly convicted.

The decision rendered by this court, in State vs. Clark, (54 Mo., 17) is conclusive of the premised condition.  As the judges then and now on the bench, were divided in opinion, it seems proper to say, that a majority of the court, as at present constituted, adheres to the conclusion then announced. The reasoning of the chief opinion is, in my view, unanswerable, if English words have determinate meanings.  The legal issue in that case, turned upon the import of the word "regulate."  If the legislative authority given to the city corporation to regulate bawdy houses, was inconsistent with a law which wholly prohibited their existence, then one law necessarily annulled the other, for both could not stand together.

I cannot conceive a harmony between one rule which says a thing may be done in a particular way, and another which says it shall not be done at all.  The mind would revolt from a law "regulating" murder or theft.  And this only because it would imply that the act might be committed, if done in conformity with the prescribed rules.  The municipal ordi-

nances and the State statutes are from a common source of authority. One class presents it in a delegated, and the other in a direct form, but it is the power of the State which speaks in both. If that power says to the bawdy house keeper, "You must keep a sign over your door, otherwise you shall be punished;" and, in the same breath says, "Your house shall not exist at all, sign or no sign," there is a manifest incongruity somewhere. In order to enforce any "regulation," it is first necessary to ascertain that the subject of treatment is a bawdy house. And when that is done, a co-existent absolute prohibition renders the idea of regulating an absurdity. We are thus driven to choose, between irreconcilable utterances, which shall prevail.

When once the fact of conflict is assented to, the rule for settling the supremacy is simple enough. The general must yield to the particular provision. The statute law of prohibition is general; the charter authority is particular and special in its operation, and must therefore prevail over the former. But a supposed difficulty is suggested in the charter amendment itself, which permits only ordinances to be passed "not inconsistent with any law of the State." The rule just mentioned, easily disposes of this. The grant of power to pass ordinances, with its qualification, constitutes a general provision adapted to an infinite variety of objects of municipal legislation. The power to regulate bawdy houses is special and particular in its application to a single object. If there is inconsistency between the two grants, the latter must prevail.

The rule has had numerous illustrations in former decisions of this court. In City of St. Louis vs. Alexander, (23 Mo., 483) a special act, approved March 1, 1851, had authorized the city to subscribe for stock in the Ohio & Mississippi R. R. Co. A charter provision which had long been in force, and which was re-enacted March, 3, 1851—two days after the special act—was in these words: "The city shall not, at any time, become a subscriber for any stock in any corporation." Here was a palpable inconsistency. The Supreme

Court gave full effect to the special authority ; thus annulling as to its particular object, the general prohibition.

In the case of State *ex rel.* Vastine vs. McDonald, the general law required that public administrators should be appointed by the courts having probate jurisdiction in their counties, respectively. A special law provided for the election, by the people, of that officer in St. Louis county. The latter law was held to control the case. There seems a peculiar fitness in the application of that decision to the present case, raising from the fact that a revisory enactment operating upon both those laws, had provided, in effect, that " acts of a private, local or temporary nature," were continued in force, if not " repugnant to the provisions of the general statutes." This feature completes a parallel with the charter amendment before us, authorizing ordinances " not inconsistent with any law of the State." In either case, the special grant overrides the prohibitory reservation, as well as every other law expressed in general terms.

Reference is made to Baldwin vs. Green, (10 Mo., 410) and other cases, in which it is held that the grant of certain powers to a municipal corporation, does not necessarily hinder an exercise of the same powers by the State, through other agencies. They have no application to this case, in which the several powers under consideration are held to be different, and in their natures impossible to be exercised at the same time and on the same objects.

It is objected, that repeals by implication are not to be favored. But this doctrine has usually been applied where the effort was to repeal a special provision by implication of a general statute. The contrary application is attempted here, without the sanction of any fitting precedent, so far as I can learn. It follows that the decision in State vs. Clark, is here re-affirmed ; and, that, consequently, the general law upon which this information was based, is held to have been repealed within the city of St. Louis, by the charter amendment of March 4, 1870. It follows, further, that this repeal of the general prohibition remains in force—the operation

of the statute herein quoted preventing any revival by the alteration of the charter made on March 30, 1874.

The consequences, whatever they may prove, belong to the legislative, and not to the judicial authorities. There appears to be no question as to the power of the city legislature to suppress the evil complained of—so far as human laws may do so, within constitutional limitations—by virtue of the amendment last referred to.

The judgment below is reversed; Judges Napton and Wagner concur; Judges Vories and Sherwood dissent.