STATE OF MISSOURI, Appellant, *v*. HENRY E. LEWIS, Respondent.

April 2, 1878.

1. Secs. 19 and 20, p. 502, of Wagner's Statutes, designed for the suppression, not regulation, of prostitution, was repealed as to St. Louis by the Charter of the City of St. Louis of 1870, and the repeal of this charter provision, in 1874, did not revive these sections.

2. The renting of a house to be kept as a bawdy-house is not a criminal offence under the statute; but the keeping of a bawdy-house is a common-law offence, and an indictment for keeping a bawdy-house will be sustained by proof of the leasing or letting of the house for that purpose.

3. All who aid or abet a misdemeanor are principal offenders, and an indict-
ment against one who leases a house for bawdy purposes must charge him
as a keeper of the house.

APPEAL from St. Louis Court of Criminal Correction.
*Affirmed.*

J. G. LODGE, P. W. FAUNTLEROY, and E. A. NOONAN,
for appellant: Sec. 20, Wagner's Statutes, p. 502, was
not repealed by the act of March 4, 1870. —*The State* v.
*De Bar*, 58 Mo. 397 ; *Baldwin* v. *Green*, 10 Mo. 410 ; *The
State* v. *County Court*, 41 Mo. 453 ; *St. Louis* v. *Insurance
Co.*, 47 Mo. 146 ; *The State* v. *Fiala*, 47 Mo. 310 ; *The
State* v. *Draper*, 47 Mo. 29 ; *The State* v. *McDonald*, 38
Mo. 529 ; *The State* v. *Percy*, 44 Mo. 159. And if it
was, the offence charged in the indictment is an indictable
offence at common law, and the defendant may be convicted
thereon. — *The Commonwealth* v. *Harrington*, 3 Pick. 26 ;
*Jennings* v. *The Commonwealth*, 17 Pick. 80 ; *The People*
v. *Erwin*, 4 Denio, 129 ; *Smith* v. *The State*, 6 Gill, 425 ;
*The Commonwealth* v. *Moore*, 11 Cush. 600 ; *Fish* v. *Dodge*,
4 Denio, 311 ; *The State* v. *Bray*, 1 Mo. 180 ; *The State* v.
*Appling*, 25 Mo. 315 ; Wag. Stat. 886, secs. 1, 2 ; 16 Gratt.
384, 519.

EDWARD WHITE, for respondent, cited: *The State* v.
*Clarke*, 54 Mo. 17 ; *The State* v. *De Bar*, 58 Mo. 395 ; *The
State* v. *Binder*, 38 Mo. 450 ; Wag. Stat. 894, sec. 3.

LEWIS, P. J., delivered the opinion of the court.

The defendant was indicted for letting a house, in the city
of St. Louis, to be used as a bawdy-house. He demurred,
on the ground that no law in force prohibits such an act in
the city of St. Louis, as a crime. The demurrer was sus-
tained, and the State appealed.

The indictment is founded upon sec. 20, p. 502, of Wag-
ner's Statutes. That and the section next preceding it are
as follows : —

"Sec. 19. Every person who shall set up or keep a com-

mon gaming-house, or a bawdy-house or brothel, shall, on conviction, be adjudged guilty of a misdemeanor, and punished by a fine not exceeding one thousand dollars.

"Sec. 20. Every person who shall knowingly lease or let to another any house, or other building, * * * for the purpose of being used or kept as a gaming-house, brothel, or bawdy-house shall, on conviction, be adjudged guilty of a misdemeanor, and punished by a fine not exceeding five hundred dollars."

In *The State* v. *Clarke*, 54 Mo. 17, it was decided by our Supreme Court that, in the provisions of the amended Charter of St. Louis, approved March 4, 1870, sec. 19, as above quoted, so far as it might operate within the city, was repealed by implication. In *The State* v. *De Bar*, 58 Mo. 395, that decision was reaffirmed; and it was further held that the operation of sec. 19 was not restored by the repeal, on March 30, 1874, of the charter provision which had abolished it. This, by reason of Wagner's Statutes, p. 894, sec. 3, which provides: "When a law repealing a former law, clause, or provision shall be itself repealed, it shall not be construed to revive such former law, clause, or provision, unless it be otherwise expressly provided." The question to be here determined is, whether sec. 20, by the process above described, shared the fate which befell sec. 19.

The charter provision of 1870 which was held to have repealed sec. 19 was that which empowered the city authorities to "regulate or suppress" bawdy-houses, by ordinance not inconsistent with any law of the State. The right to regulate could not coexist with an absolute prohibition of the thing to be regulated. The two laws being thus found inconsistent with each other, the general prohibition was compelled to give way. But, is a like inconsistency discovered between an authority to regulate and an incapacity to lease or let a habitation for the thing to be regulated? Logically, it might be answered that there is no such inconsistency, because the thing regulated may

exist upon premises which are neither leased nor let. A bawdy-house, therefore, may exist and be regulated under the charter provision, and yet be not repugnant to sec. 20, if kept by the owner of the premises. The two laws will thus stand together, and no repeal will arise by implication.

Following the same line of argument, we may say that sec. 20 does not prohibit or suppress bawdy-houses, but only provides a regulation for them. This will bring the case within the rule of *Baldwin* v. *Green*, 10 Mo. 410, where it was held that a power conferred on a municipal authority to regulate any subject-matter within its jurisdiction may coexist with a power residing in the State to provide regulations also for the same subject-matter in the same locality. In short, a general statute which suppresses, is inconsistent with a special statute which authorizes regulation, and is, therefore, repealed by it. But a general statute which regulates is not inconsistent with a special statute which authorizes regulation by a subordinate agency, and hence is not repealed thereby. Here an application of the charter reservation that any municipal regulation shall be " not inconsistent with any law of this State " would annul the municipal regulations in so far as they might tolerate the keeping of a bawdy-house upon leased premises. The superior State regulation would require that the keeper of a house for such purposes should be also its owner. With this limitation enforced, the bawdy-house would be a proper subject for municipal regulation. The prohibition against leasing or letting would thus remain the law of the land.

All this reasoning, however, assumes that, by sec. 20, the Legislature intended to regulate bawdy-houses in permissive existence. Such an assumption is repelled by the whole history, tenor, and spirit of the legislation. The controlling purpose throughout is absolute suppression. Having declared this purpose in sec. 19, the law-maker

proceeds, in sec. 20, to insure its consummation, by suppressing the means whereby the evil might acquire a footing. It becomes unlawful to let a house for the unholy purpose, in like manner as it is unlawful to sell or to give to one a weapon for the purpose of committing murder. Such was unquestionably the meaning of the Legislature when these statutory provisions were adopted. If we now recognize a different meaning, it must be because of later enactments that were not then in contemplation, and that do not undertake to interpret the former law. No canon of interpretation will allow such a remodelling of the legislative intent into a shape manifestly variant from the original. We are driven to the conclusion that the twentieth section, no less than the nineteenth, was framed for a complete suppression of bawdy-houses, that was wholly inconsistent with any idea of mere regulation. The charter provision, therefore, that destroyed the one by implication, was not less fatal to the other.

It is urged for the State, in an able argument, that although the repeal of the charter provision may not have revived sec. 20, if this was repealed by implication, yet the repeal of the charter provision, by leaving the law as it stood before the enactment of any statute, did revive the common law, under which the indictment should have been sustained. We may concede the first position, and yet find the second open to serious question. At common law, the keeping of a bawdy-house was a misdemeanor; and all aiders and abettors of a misdemeanor were chargeable as principals, and not otherwise. If, therefore, the indictment in the present case had charged the defendant with keeping a bawdy-house, it might, on common-law principles, have been sustained by proof of his leasing or letting a house to another for the guilty purpose. But, while there is some disagreement among American jurists, the weight of authority seems conclusively in favor of the proposition that such leasing or letting is not, *per se*, a crime at common

law, and hence an indictment which charges nothing more cannot be sustained.

In *The Commonwealth* v. *Harrington*, 3 Pick. 26, the defendant was convicted upon an indictment for letting a house for bawdy purposes, and the conviction was sustained. The opinion, delivered by Chief Justice Parker, bases its conclusions on the principle in *King* v. *Phillips*, 6 East, 464, in which there was a challenge to fight a duel. This was held to be a distinct offence, as inciting to the perpetration of a graver crime. The learned chief justice expresses, however, strong doubts on the subject, since no such application of the principle appears to have obtained in England.

In *Brockway* v. *The People*, 2 Hill, 558, the question was presented under a similar indictment. Said Nelson, C. J.: "It will be admitted by all, that the act of renting a dwelling-house to be kept for the purposes of public prostitution is, in itself, highly indecent and immoral, evincing a mind deeply depraved and profligate. Indeed, the act is so characterized by the common law, which denounces the contract as illegal and void. But I cannot say that it constitutes a criminal offence, punishable by indictment. We have no statute on the subject, and I have been unable to find, after a good deal of search, any precedent or authority in the common law which would warrant me in sustaining, as I am certainly inclined to do, the conviction in this case." Here he refers to *The Commonwealth* v. *Harrington*, above cited, and says that in that case an erroneous application was made of the principle in *King* v. *Phillips*. He points out with much clearness the distinction between an act which directly prompts and incites one to the commission of a crime, and an act which merely supplies the means whereby it may be possible to commit it. In the first case, an indictment would always lie, at common law; but in the second, never. Cowen, J., dissented, on purely moral grounds, from the conclusion that the leas-

ing was not a common-law offence.   He admitted, however, that the indictment in such cases should charge the offender as a principal in keeping the bawdy-house.

In *The People* v. *Erwin*, 4 Denio, 129, it is held, in general terms, that, by the common law, all who aid or abet a misdemeanor are principal offenders, and that an indictment against one who leases a house for bawdy purposes should charge him as the keeper of the house.   The decision in *Brockway* v. *The People* is explained and approved, as in consonance with these principles.

We have examined all the authorities cited in the briefs of counsel, and some others.   Upon the whole, we conclude, as already intimated, that a decisive weight of authority is against any conviction at common law for letting a house for bawdy purposes, unless the indictment charge the defendant as a keeper of the house.

The judgment, therefore, is affirmed.   All the judges concur.