THE STATE v. RICHARD WILLIAMS et al.; JAMES THOMPSON, Appellant.

In Banc, February 19, 1901.

1. **Pool Selling:** PURPOSE OF ACT OF 1897. Book-making and pool-selling within the scope and meaning of the Act of April 7, 1897, are gambling or gaming, which the State may in the exercise of its police powers, prohibit altogether, or may regulate and control by restricting them to certain localities, or by prohibiting them from being practiced in other localities.

2. ——: ——: DELEGATION OF LEGISLATIVE POWERS. Said act does not delegate legislative powers to an executive officer by conferring upon the State Auditor the right to say what applicants for license to carry on the business of pool-selling and book-making are persons of good character, and what race courses or fair grounds are of good repute, and the further right to withhold such license if he believes such applicants or race courses are not of good character. This is not the power to make a law, but the power to determine a fact. The Legislature may invest this power in such persons as it deems proper. As such, said act is not violative of section 1 of article 4 of the Missouri Constitution.

3. ——: ——: SPECIAL OR LOCAL LAW. Said act is not a special or local law within the meaning of the Constitution, since it embraces all persons and affects alike all who are or choose to place themselves within its reach. Under said act book-making and pool-selling are prohibited at all places except upon race courses and fair grounds where the races are to be run, and they can be run only upon the procurement of a license from the State Auditor, by any person, of proper character, who desires to engage in such business, and hence it is not class legislation, either as to persons or place. (Distinguishing State v. Walsh, 136 Mo. 400, and State v. Thomas, 138 Mo. 100.)

Appeal from St. Louis Court of Criminal Correction.—*Hon. Willis H. Clark,* Judge.

AFFIRMED.

*T. J. Rowe* for appellant.

The act approved April 7, 1897 (Laws 1897, p. 100), is prohibited by sections 1 and 53, art. 4 of the Constitution of Missouri, and section 1, art. 14 of the amendments to the Constitution of the United States.    (a)  As to violation of amendment 14, Federal Constitution, see:   Cooley, Const. Lim. (6 Ed.), 481; Geoza v. Freman, 148 U. S. 657; Railroad v. Pennsylvania, 134 U. S. 232; Yocum v. Hopkins, 118 U. S. 356; Missouri v. Lewis, 101 U. S. 22; Barbier v. Connoly, 113 U. S. 27; Slaughter·House Cases, 16 Wall. 36.    (b) ·As to violation of section 53, article 4, State Constitution, see: State v. Thomas, 138 Mo. 102; State v. Walsh, 136 Mo. 400; State v. Julow, 129 Mo. 176; State v. Cranneman, 132 Mo. 326; State v. Loomis, 115 Mo. 307; State v. Leman, 46 Mo. 375; State v. Hayden, 31 Mo. 35; State ex rel. v. Herrmann, 75 Mo. 340; State ex rel. v. Tolle, 71 Mo. 650; Lynch v. Murphy, 119 Mo. 63; Winchester v. Nutter, 52 N. H. 507; Brennan v. Association, 63 N. Y. 188; Swigart v. People, 154 Ill. 284.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1)  There can be no question but that book-making and pool-selling, as contemplated by this act, constitute gaming or gambling.    At common law gaming was not a crime, unless so public as to constitute a nuisance.    State v. Hawkins, 15 Ark. 259; State v. Jones, 63 Md. 253; State v. Borders, 24 Tex. App. 333; 2 McClain's Crim. Law, sec. 1282.    The police power of the State, so far·as it affects gambling or any other instrument of vice, may be exercised by the entire or partial prohibition of the business, practice or vice regarded as injuri-

State v. Thompson.

ous; but it is more commonly exercised by imposing taxes or penalties to discourage or restrict the business or practice deemed injurious. The real object of such regulation is protection to public health, morals and business enterprise. It is unnecessary to call the court's attention to the fact that grave vices grow out of the practice of gambling and betting on the result of horse races, as well as out of any other species of gaming. Certainly it is that character of vice which the State may regulate and control in the exercise of its police power, by either prohibiting it entirely or restraining the right to indulge therein to certain localities, as well as prohibit it from being practiced in other localities. People v. Beatty, 14 Cal. 566; Commonwealth v. Smith, 166 Mass. 370; State v. Addington, 77 Mo. 117; In re Falk, 42 Oh. St. 638; Chicago v. Brownell, 34 N. E. 595. (2) The Constitution is complied with in this respect when the law operates uniformly upon all persons who are brought within the relations and circumstances provided for by it. McAnicle v. Railroad, 20 Ia. 338; Sedgwick on Statutory Construction, p. 439; Dent v. West Virginia, 129 U. S. 114; Hays v. Missouri, 120 U. S. 68; Barbier v. Connoly, 113 U. S. 27; Missouri v. Lewis, 101 U. S. 22. (3) The statute under consideration in no wise violates the fourteenth amendment of the Federal Constitution, as is maintained by the appellant. Repeated decisions from the Supreme Court of the United States have determined that legislation of this character is not in violation of that instrument. Crowley v. Christensen, 137 U. S. 86; Eilenbecker v. Plymouth Co., 134 U. S. 31; Kidd v. Pearson, 128 U. S. 1; Mugler v. Kansas, 123 U. S. 625; Foster v. Kansas, 112 U. S. 201. (4) The question here presented is not new to the courts of this country. A similar statute has been passed upon and constitutionally upheld by the Supreme Court of the State of Tennessee. State v. Debardelaben, 99 Tenn. 649. The

statute was there held to be general and not class legislation. State v. Posey, 1 Hump. (Tenn.), 384; State v. Huff, 2 Swan (Tenn.), 280; State v. Ransome, 91 Tenn. 717; State v. Williams, 92 Tenn. 275; State v. Atkins, 95 Tenn. 475; State v. Mosley, 14 Ala. 390; State v. Harris, 9 Tex. App. 308.   (5) After the ruling of the Supreme Court in the Walsh case, the right of book-making and pool-selling was turned loose to the people of the State and was permitted, by reason of a want of legislation, to flourish without prohibition, restriction or control until the act of 1897 was placed upon the statute books of the State.   It will be noticed that this act does not entirely prevent such business from being conducted, but merely restricts and regulates it.   It will not be questioned that the Legislature is clothed with full constitutional power to enact such laws and guarantee such police regulations as will preserve the peace, protect good morals, restrain vice and protect the property, health and comfort of the people; and that book-making and pool-selling is a vice properly falling within the provisions of such acknowledged authority, is not to be disputed.   The act is uniform in its application and operates alike upon all coming within its provisions, and in no way denies defendants the equal protection of the law.   Hays v. Missouri, 120 U. S. 68; Barbier v. Connoly, 113 U. S. 27; Missouri v. Lewis, 101 U. S. 22; Tiedeman on Police Power, p. 291.

*Boyle, Priest & Lehmann, William M. Williams* and *Thos. B. Harvey* also for the State.

(1) "Gaming is a vice which the State may, in the exercise of its police power, regulate or suppress, and it may do so by prohibiting gaming on particular games or in particular places."   14 Am. and Eng. Ency. of Law (2 Ed.), 666; St.

Louis v. Fitz, 53 Mo. 585; State v. Clark, 54 Mo. 17; State v. Vic. Debar, 58 Mo. 395; Debardelaben v. State, 99 Tenn. 649; Palmer v. State, 88 Tenn. 557; Brown v. State, 88 Tenn. 572; Daley v. State, 77 Tenn. 412; Ex parte Tuttle (Cal.), 27 Pac. Rep. 933; State ex rel. v. Donovan, 15 Pac. Rep. 783; State v. Raymond, 29 Pac. Rep. 732; Brennan v. Brighton Beach Racing Association, 9 N. Y. S. 220; L'Hote v. New Orleans, 177 U. S. 578; Humes v. Ft. Smith, 93 Fed. Rep. 863; Cooley on Constitutional Limitations (3 Ed.), p. 596; Cooley on Taxation, p. 403; Houton v. State, 41 Texas; Rogers v. State, 26 Ala.; St. Louis v. Fitz, 53 Mo. 585; State ex rel. v. Donovan, 15 Pac. Rep. 784. (2) The restrictions contained in the law are reasonable in their nature, and are plainly designed to further the general object of the law by confining book-making and pool-selling to such persons, places and times as in the judgment of the Legislature would best serve the public welfare. Crowley v. Christensen, 137 U. S. 86; In re Ruth, 32 Iowa 250; Tragerser v. Gray, 20 Atl. Rep. 905; Meyer v. Baker, 12 N. E. 81; 14 Am. and Eng. Ency. of Law (2 Ed.), 672. (3) The act is not a delegation of legislative authority, but simply delegates power to determine the fact or state of things upon which the law intends to make its own action depend. Locke's Appeal, 72 Pa. St. 491; In re Flaherty, 105 Cal. 558; Crowley v. Christensen, 137 U. S. 86; Meyer v. Baker, 120 Ill. 567; State v. Hill, 19 Atl. Rep. 789; State v. Barrenger, 110 N. C. 525.

*T. J. Rowe* for appellant in reply.

2 Bouvier, p. 299, defines *malum in se*—evil in itself— a crime by reason of its inherent nature. An offense, *malum in se*, is one which is naturally evil, as murder, theft and the like; offenses at common law are generally *mala in se*. At

Vol. 160 mo—22

common law no gaming was punishable, and yet it was a penal offense to keep a common gaming house.    1 Bish. Cr. Law, p. 1135.    A common gaming house is a nuisance *per se;* and all such nuisances are *malum in se*—because evil in themselves. The Act of 1897 permits the owner of a race track to keep and maintain a common gaming house.    One who suffers or permits book-makers or pool-sellers to ply their vocation on his premises is the keeper of a common gaming house.    Swigart v. The People, 154 Ill. 284; People v. Weithoff, 51 Mich. 203. The Act of 1897 gives to the keeper of a race track the right and privilege to keep and maintain a nuisance *per se*, a common gaming house, on his race track.    This law bears no facial resemblance to any dramshop law that has been declared a valid law by any appellate court.    The keeping of a dramshop is a legitimate business, but the keeping of a bawdy house or common gaming house is an evil in itself, and, as we previously said, is *malum in se*.    But, suppose the General Assembly passed a law permitting the keeping of dramshops only within the inclosure of a race track, would any one for a moment deny that such legislation granted special privileges to the keepers of race tracks?    Why should the owner of a track be granted the right and privilege to maintain within the fence of his race track a bawdy house, common gaming house, or a dramshop, and the same privileges denied to all other persons?    Can the learned counsel for the State give a more rational answer than to say "it is a police regulation and the General Assembly has the power to regulate bawdy houses, gaming houses and dramshops?"    A police regulation can not violate plain constitutional privisions.    Eliminate the license feature from the Act of 1897, and the rights, privileges and immunities therein granted to the keeper of a race track are identical with the rights, privileges and immunities granted by the Act of 1895, which was declared unconstitutional in State v. Walsh, 136

State v. Thompson.

Mo. 400.   To declare the Act of 1897 valid, the court must overrule State v. Walsh, supra.

BURGESS, C. J.—On the nineteenth day of January, 1900, the defendant was convicted in the St. Louis Court of Criminal Correction, and fined one thousand dollars, under an information filed in said court against him and others, by the prosecuting attorney of said court, charging them with book-making and pool-selling, in violation of an act of the General Assembly of the State of Missouri entitled "An Act to punish book-making and pool-selling by unlicensed persons, to provide for the issuance of such a license and to dispose of the funds arising from such license," approved April 7, 1897, at No. 112 North Fourth street in the city of St. Louis and State of Missouri, on the tenth day of October, 1899, by unlawfully engaging in book-making by means of a system of gambling, commonly called a book upon the result of a certain contest of speed of beasts, known as horses by certain persons, in the manner therein named, which was to take place thereafter on the tenth day of October, 1899, beyond the limits of the State of Missouri and by then and there betting money with certain persons therein named on the result of said contests, etc.

Defendant appeals.

The only question raised by defendant on this appeal, is with respect to the validity of the act of the Legislature, which he contends is unconstitutional because violative of sections one and fifty-three of article 4 of the Constitution of this State, and of section one, article 14, of the amendments to the Constitution of the United States.

Section one of article 4 of the State Constitution provides that "the legislative power, subject to the limitations herein contained, shall be vested in a Senate and House of Representatives, to be styled 'The General Assembly of the State of Missouri.'"

The act provides that no person shall record or register, by mechanical or other means, bets or wagers, or sell auction pools, or engage in any book-making, by or through any device, book, instrument or contrivance, upon the result of any trial or contest of skill, speed or power of endurance of man or beast, which is to take place within or beyond the limits of this State, without first having obtained a license as in the act provided.

Section 2 provides that any person of good reputation, desiring to obtain a license to sell auction pools, make books, or register wagers or bets, by mechanical or other means, shall apply, in writing under oath, to the State Auditor, for such license, stating that the contest upon which such pools, books or wagers made are actually to take place upon the race-course or fair grounds where he desires to carry on business, the character of the business he desires to conduct and the length of time; and the State Auditor, if satisfied with the good character of such applicant and the good repute of the race-course or fair ground upon which the applicant may desire to conduct such business, may issue a license authorizing him to do any or all of the things provided therein. The auditor may refuse to issue license to any person to be used upon any race-course or fair ground after such place or places have been operated for a period of ninety days in any one year.

Section 3 requires that no license shall be issued for less than three nor more than ninety days, and shall express upon its face the particular class of business which the applicant is permitted to conduct, and such license shall only authorize him to engage in pool-selling, book-making or registering bets as expressed therein. It shall also state the number of books and registers to be used and the length of time and place where conducted, and no license shall be issued from the first day of November to the first day of April in each year.

Section 4 prohibits the business being conducted at any other place than mentioned in the license and prevents it being conducted at any other time than between 10 o'clock a. m. and 7 o'clock p. m.; and such person holding a license shall not be permitted to sell pools, accept or register bets from any minor.

Section 5 prescribes the penalty for the violation of any of the provisions of the act.

It is perfectly clear that "book-making" and "pool-selling" within the scope and meaning of this act, are gaming or gambling, which the State may in the exercise of its police powers, prohibit altogether, or may regulate and control by restricting it to certain localities, or by prohibiting it from being practiced in other localities.

Thus it was held in State v. Clarke, 54 Mo. 17, that an ordinance of the city if St. Louis licensing bawdy houses was valid under the city charter, and that a license taken out in conformity with the ordinance would shield them from criminal proceedings by the State.    Indeed there is no conflict in the authorities upon this question, or the right of cities to suppress such houses, when authorized to do so by their charters.

In City of St. Louis v. Fitz, 53 Mo. 585, it is said: "There is no doubt of the power of the Legislature, or of municipalities deriving their power from the Legislature, to make police regulations designed to promote the health and morals of the community.    Laws to prohibit *or regulate* gaming, sales of intoxicating liquors, houses of prostitution, and thus indirectly advance the morals and good order of society, are beyond question."

Any practice, the tendency of which is to corrupt the morals of those who participate in, or witness its practice, is a proper subject of regulation by the State; and that "book-making and pool-selling" and betting upon horse racing are demoralizing in their tendencies, and hence evils which the law

may legitimately suppress, without infringing upon the constitutional rights of any citizen, is no longer an open question.

In the case of Ex parte Tuttle, 91 Cal. 589, it is said: "Any practice or business, the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, is a legitimate subject for *regulation.* or prohibition by the State; and that gambling, in the various modes in which it is practiced, is thus demoralizing in its tendencies, and therefore an evil which the law may rightfully suppress without interfering with any of those inherent rights of citizenship which it is the object of government to protect and secure, is no longer an open question. The measures needful or appropriate to be taken in the exercise of this police power are determined by legislative policy, and for this purpose a wide discretion is committed to the lawmaking body. Whether it shall entirely prohibit, or only *regulate* by confining such practices within prescribed limits; whether the law shall apply to every kind of gambling, or only to those games or wagers in which evil effects appear with greatest prominence, must be determined primarily by the legislative department of the State, or of the municipality authorized to exercise this great power, which is conferred for the purpose of securing the public safety and welfare; and unless it clearly appears that a statute or ordinance ostensibly enacted for this purpose has no real or substantial relation to these objects, and that the fundamental rights of the citizen are assailed under the guise of a police regulation, the action of that department is conclusive."

The same rule is announced in State ex rel. Patterson v. Donovan, 20 Nevada 75; Cooley on Constitutional Limitations (6 Ed.), p. 596.

A similar question was before the Supreme Court of the United States in L'Hote v. New Orleans, 177 U. S. 596, in

which it was said: "In this respect we premise by saying that one of the difficult social problems of the day is what shall be done in respect to those vocations which minister to and feed upon human weaknesses, appetites and passions. The management of these vocations comes directly within the scope of what is known as the police power. They affect directly the public health and morals. Their management becomes a matter of growing importance, especially in our larger cities, where from the very density of the population the things which minister to vice tend to increase and multiply. It has been often said that the police power was not by the Federal Constitution transferred to the Nation, but was reserved to the States, and that upon them rests the duty of so exercising it as to protect the public health and morals. . . . . . . . Obviously, the regulation of houses of ill-fame, legislation in respect to women of loose character, may involve one of three possibilities: First, absolute prohibition; second, full freedom in respect to places, coupled with rules of conduct; or, third, a restriction of the location of such houses to certain defined limits. Whatever course of conduct the Legislature may adopt is in a general way conclusive upon all courts, State and Federal. It is no part of the judicial function to determine the wisdom or folly of a regulation by the legislative body in respect to matters of a police nature."

But defendant claims that section 2 of the act delegates legislative power to an executive officer, namely the State Auditor, in that it confers upon him the right to say who are persons of good character, what race courses or fair grounds are of good repute, the right to grant a license to any person he believes of good reputation to make a book on A's racetrack, and upon the same person a license to make a book on C's track, etc.

While the Legislature could not delegate to the State

Auditor the power to make laws, it does not follow that it could not delegate to him the power to pass upon the character of persons applicant for license to sell auction pools, make books or regulate wagers or bets upon contests to take place upon the race-course where they desire to carry on the business, and to determine what race-course and fair grounds are of good repute, and to grant to persons whom he may find to be of good character a license to sell auction pools thereon. The power delegated to the State Auditor is not the power to make a law, but is a power to determine a fact or things, upon which the action of the law depends, and it can not be said to be legislative in its character.

The State in the exercise of its police regulations may prohibit gambling altogether, or regulate it in such manner as it may see proper and for that purpose may vest such officers as it may see proper with the power to pass upon the character of persons who apply for license for that purpose, as well also as the place where to be conducted and to grant license to such person as he may think entitled thereto, to conduct their business at such times and places, as he may think proper not prohibited by law.

In passing upon a similar question in Crowley v. Christensen, 137 U. S. 86, it was said: "The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the State; nor is it one which can be brought under the cognizance of the courts of the United States."

So in Locke's Appeal, 78 Pa. St. 491, it is said: "The Legislature can not delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which can not be known to a lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation........ If the power to determine the expediency or necessity of granting licenses to sell liquors in a municipal division, can be committed to a commission, a council, or a court, which no one can dispute, why can not the people themselves be authorized to determine the same thing? If a determining power can not be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws and resolutions in the nature of laws, binding and affecting both the persons and the property of the citizens. If a determining power can not be conferred by law, there can be no law that is not absolute, unconditional and peremptory, and nothing which is unknown, uncertain and contingent can be the subject of law."

In State v. Barringer, 110 North Carolina 525, it was held that a law which prohibits the manufacture of spirituous liquors within three miles of the Orphans Home, near Barium Springs in that State, without the written permission of the superintendent of the home, was a constitutional exercise of the power of police regulations.

The discretion vested in the State Auditor is not arbitrary. He is by law made the State's agent, and is bound to exercise the discretion vested in him fairly and impartially for the just purpose of carrying out the intention of the law.

It is frequently the case that statutes require particular

things to be done to make that legal which would otherwise be illegal, which depend upon the judgment and discretion of a designated agent, officer or person, and under such circumstances the discretion is not arbitrary, but is lawful when lawfully exercised.

Statutes and ordinances have been sustained forbidding orations, etc., in a park without the prior consent of the park commissioners (Commonwealth v. Abrahams, 156 Mass. 57), or upon the common or other grounds in the absence of the permission of the city committee (Commonwealth v. Davis, 140 Mass. 485); prohibiting the occupancy of a place on the street for a stand in the absence of permission of the clerk of Faneuil Hall Market (Nightingale, Petitioner, 11 Pick. 168); prohibiting the keeping of swine without a permit in writing from the board of health (Quincy v. Kennard, 151 Mass. 563); forbidding the erection of wooden buildings without the permit of the commissioners of the town through their clerk (Commissioners, etc. v. Covey, 74 Md. 262); and forbidding the beating of drums in the travelled streets of a city, without the permission of the president of the board of trustees of the municipality (In re Flaherty, 105 Cal. 558).

In all of these cases, and numerous others that might be cited, the power to grant permission, in other words a license, was vested in some particular person or persons, committee or officers, and in none of them was it held that the power to do so was a delegation of legislative power.

Our conclusion is that the act is not violative of section 1 of article 4 of the State Constitution.

A further contention is that the law in question violates section 53, article 4 of the State Constitution, which provides that the "General Assembly shall not pass any local or special law," in that it grants to corporations and individuals special or exclusive rights and immunities and State v. Walsh, 136

State v. Thompson.

Mo. 400, and State v. Thomas, 138 Mo. 100, are relied upon as supporting these contentions.

In Walsh's case, an act of the Legislature (Laws 1895, p. 150) was held to be a special law and void under said section 53, upon the ground that "it takes book-makers, pool-sellers and bet-mongers as a class, and divides them into two portions, one of which, to-wit, that portion which assembles 'on the premises or within the limits or inclosure of a regular race-course,' and renders the members of that portion immune from punishment, while another portion of the same *genus,* book-maker, pool-seller or bet-monger who pursues his avocation outside or immediately outside of the sacred precincts of 'a regular race-course,' is subject to fine and imprisonment."

In Thomas's case Walsh's case was approved, and it was held that the Act of 1891 (Laws of 1891, page 122), which prohibits the selling of bets, "upon the result of any trial or contest which is to take place beyond the limits of this State," but exempts, by implication, all persons who make such wagers on "contests which are to take place within this State," is a special law, and in conflict with said section 53.   And that the act is a special law, and void for the further reason that it separates offenders who gamble on events to occur *outside* of this State from those who do the same things, as to events occurring within this State; prescribes punishment for the former, and protection to the latter, thus dividing natural classes into two portions, making two classes out of one, and arbitrarily enacts different rules for the government of each.

The act passed upon in Thomas's case made it a criminal offense to wager upon horse races to take place out of this State, while wagering upon similar races to occur in this State were exempt, and it was correctly held that the law was special and therefore void.

The act adjudicated upon in the Walsh case (Laws 1895,

page 150) provides: "That any person who keeps any room, shed, tenement, tent, booth or building, or any part thereof, within this State, and who occupies same with any book, instrument or device for the purpose of recording or registering bets or wagers, or selling pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, which is to be made or to take place within or without this State, or any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, which is to be made or take place within or without this State; or, being the owner, lessee or occupant of any room, tenement, shed, tent, booth or building, or any part thereof, knowingly permit the same to be used or occupied for any of the purposes hereinabove set forth, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers or selling of pools as are hereinabove set forth, or becomes the custodian or depositary for hire or privilege of any money, property or thing of value which is staked, wagered or pledged contrary to the provisions of this act, shall be guilty of a misdemeanor, and on conviction shall be punished by imprisonment in the county jail for a term of not less than six months or more than one year, and by a fine of not less than one thousand dollars, or by both such fine and imprisonment: Provided, that nothing in this act shall be so construed as to prohibit or make it unlawful for any person to engage in or register bets and wagers, make books, sell pools or bet upon any trial or contest of speed of a horse, or between horses, on the premises or within the limits or inclosure of a regular racecourse on which such contest of speed is had, and at and prior to the time thereof: Provided, that it shall be unlawful to make and sell said pools or book-bets to minors; and any person selling said pools and book-bets to any minor shall be deemed

guilty of a misdemeanor, and upon conviction, shall be punished by imprisonment in the county jail for a term of not less than three months or more than one year, and by a fine of not less than five hundred dollars."

Now, the only material difference between the Act of 1895, passed upon and held to be invalid in the Walsh case, and the act in question in this case (Laws 1897, page 100), is that under this act book-making and pool-selling are prohibited at all places except upon race-courses and fair grounds where the races are to be run, and then only upon the procurement of a license from the State Auditor by any person who desires to engage in such business, while no license is provided for by the Act of 1895.

Gaming, sales of intoxicating liquors, houses of prostitution, and any practice which tends to demoralize, weaken and corrupt the morals may be regulated by the State and confined to certain localities or prohibited altogether under its police powers without infringing upon the inherent rights of any of its citizens.    "And unless it clearly appears that a statute or ordinance, ostensibly enacted for this purpose, has no real or substantial relation to these subjects, and that the fundamental rights of the citizen are assailed under the guise of a police regulation, the action of that department is conclusive."    [Ex parte Tuttle, supra.]

The sale of intoxicating liquors by retail is permitted in this State, only under a license for that purpose, the business to be conducted at some particular building, and the power of the Legislature to thus regulate its sale has never been called in question.    So it was held by this court that a city ordinance licensing bawdy houses in the city of St. Louis was valid under its charter.    [State v. Clark, supra; State v. Vic. Debar, 58 Mo. 395.]

In Ex parte Tuttle, supra, an ordinance of the city of

San Francisco, prohibiting the selling of pools on horse races, except within the inclosure of a racetrack where the race is to be run, is a valid police regulation, not in conflict with the Constitution of that State, and not void because its incidental effect may be to confer a special privilege or benefit upon those who can own or control the race-courses by giving them the exclusive right to carry on the business, or of selling to others the privilege of the pool-selling.

It was held in Brennan v. Brighton Beach Racing Association, 9 N. Y. S. 220, that by the laws of New York taxing race associations on their receipts, and declaring that "such racing and pool-selling in the State shall be confined to the period between the fifteenth day of May and the fifteenth day of October, in each year, and all pool-selling shall be confined to the tracks where the races take place, and on the days when they take place," it was the intention of the Legislature to sanction pool-selling at the time and places fixed by the statute, and that a purchaser of a pool ticket at such a time and place may sue for his share in the pool.

In State v. Debardelaben, 99 Tenn. 649, the defendant was tried, convicted, and fined for betting upon a horse race while without the inclosure within which the race was run, and appealed.    The law under which the conviction was had provides, among other things, that "horse racing, without regard to the distance which may be run, trotted, or paced, where the same is run, trotted, or paced upon a racetrack, or path made or kept for the purpose, and inclosed by a substantial fence . . . . . . . but it shall be unlawful gaming to bet or wager in any way upon any horse race, unless the racetrack upon which the race is run, trotted, or paced be inclosed by a substantial fence, and the bet or wager be made within said inclosure, upon a race to be run, trotted or paced within said inclosure."    *Held,* that horse racing is indictable as gaming, under

the laws of the State of Tennessee, unless the race is run within a substantial inclosure, and the bet made therein, and that the statute is not vicious class legislation.    That the class legislation is not arbitrary or capricious, as the law embraces all persons and affects alike all who are or choose to place themselves within its reach.

So in the case at bar, the law "embraces all persons alike who choose to place themselves within its reach," and is not, therefore, vicious class legislation, either as ·to persons or place.

And if bawdy houses, the sale by retail of intoxicating liquors, and gambling, may be licensed by the State in the exercise of its police powers to be conducted by certain persons, at specified places, and prohibited at all others, in regard to which there can be no question, for the same reasons it must follow that the Act of 1897, in declaring betting on horse racing to be gambling, and in authorizing it, and the licensing of book-making and pool-selling, to be carried on at certain race-courses, and in prohibiting it at all other places, is a legitimate exercise of the police power of the State.

The act is not in an way in conflict with section 1, article 14, of the amendments to the Constitution of the United States.

Our conclusion is that the law is valid and that the judgment should be affirmed.    It is so ordered.    All concur.