# State *ex rel.* Crumpton *v.* Montgomery, *et al.* Excise Commissioners.

## *Quo Warranto.*

(Decided May 9, 1912. 59 South. 294.)

1. *Quo Warranto; Subjects; Statutes.*—Quo Warranto is the proper way to test the unlawful usurpation or unlawful exercise of an office, under the direct provisions of section 5453, Code 1907.

2. *Constitutional Law; Statutes; Necessity of Determination.*— Unless essential to the decision of an actual case, the constitutionality of legislative enactments will not be inquired into or determined.

3. *Same; Who May Assail.*—The validity of a legislative enactment is assumed and until assailed by some one injuriously affected thereby, will not be inquired into.

4. *Same; Delegation of Legislative Power.*—Acts 1911, p. 26, and Acts 1911, p. 249 (known as Parks and Smith Bill respectively) are not invalid as a delegation of legislative power to the people, because they give a popular choice as to whether intoxicating liquors shall be sold, etc.

5. *Same.*—Because of the fact that Acts 1911, p. 26, gives a popular choice as to whether intoxicating liquors be sold by licensed saloons, or by dispensaries, does not render such act unconstitutional as a delegation of legislative power.

6. *Same; What Constitutes.*—The fact that Acts 1911, p. 26, prohibits the sale of intoxicating liquors except under police jurisdiction, does not render said act invalid as an improper delegation of legislative power; such provision fixing the sale of liquors on a condition, and not on the whim of municipal authority.

[State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners.]

7. *Same; Delegation of Authority.*—Although the legislature cannot delegate the power to make, alter or suspend a law, the provisions of Acts 1911, p. 249, making the Excise Commission, an administrative agent in the selection of licensees, does not render said act invalid.

8. *Statutes; Construction; In Pari Materia.*—Where acts are passed at the same session, both relating to the subject of intoxicating liquors, the one referring to the other, they will be construed together as in pari materia.

9. *Same; Invalidity; Uncertainty.*—Acts 1909, p. 26, is not rendered invalid as having been enacted upon an unknown contingency because it provides for a popular election to determine the question of the sale of intoxicants, and provides that the act shall not go into effect until the legislature enacts laws governing the sale of such intoxicants.

10. *Same; Title; Subject.*—A provision in a legislative act that it shall be suspended until the passage of certain other legislation, is not a part of the subject of the act within the influence of section 45, Constitution 1901.

11. *Same.*—The title of Acts 1911, p. 26, is sufficient to warrant inclusion in such act of section 10½ of said act, such section not being an act establishing or retaining prohibition in the counties, but merely describing the places therein, where intoxicants may be sold.

12. *Same; Invalid in Part; Effect.*—In view of section 196, Constitution 1901, sections of a statute which are separable from invalid sections will be held valid; if, however, such sections are so interdependent upon the others that it cannot be presumed that the legislature would have enacted one without the other, then all are invalid.

13. *Same; Legislative Power.*—The legislature has no power to pass rules governing the determination of the court of the constitutionality or unconstitutionality of the statutes, hence, the provisions of section 38, Acts 1911, p. 249, will not support sections of the act which are wholly dependent on invalid sections.

14. *Intoxicating Liquors; Statutes; Construction; Completeness.*—The fact that by section 17 of Acts 1911, p. 26, its operation was suspended until the enactment of other legislation, did not render the act an incomplete act of legislation, the effect being merely to suspend its operation until the happening of a certain event.

15. *Same; License; Construction.*—Under section 94, Acts 1911, p. 249, in the election therein contemplated, a compliance therewith is had when the manufacture or sale is the subject of the ballot, the court not being able to assume that the elements described are or should be conjoined, as they are written disjunctively, and must be so treated.

16. *Same; Local Option; Construction.*—As Acts 1911, p. 26, and Acts 1911, p. 249, deal with the same subject, and refer to each other, and were passed by the same legislature, they are in pari materia, and the Smith Bill must be construed as requiring a majority only of the votes cast in the election to determine whether the sale or manufacture of intoxicants shall be licensed.

[State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners.]

*17. Same; Regulation; Excise Commission.*—The Excise Commission provided for by section 27, Acts 1911, p. 249, is not unauthorized, although section 77, Constitution 1901, provides that no state office shall be created or continued for the inspection or measuring of any merchandise, since the inspection of liquors by the Commission is only a part of its duties.

*18. Same; Regulation; License.*—The right to sell or manufacture intoxicants is a mere license or privilege, and hence, sections 8, 9. and 15, Acts 1911, p. 249, are not invalid, as giving the Excise Commission a discretionary power in the selection of licensees.

*19. Officers; Duties; Presumption.*—It will not be presumed that the Excise Commission will undertake to defeat the operation of the law creating them, by any subtifuge.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. Pearson.

Quo Warranto by the state on the relation of W. B. Crumpton against Arthur H. Montgomery and others, to test their right to hold the office of Excise Commissioners of Montgomery County. Judgment for respondents and relator appeals. Affirmed.

SAMUEL D. WEAKLEY, and J. M. CHILTON, for appellant. The petition attacks the validity of the law creating the office, and therefore denies the rightful existence of the office, and quo warranto is the remedy.— *State ex rel. Winter v. Sayre,* 142 Ala. 641; *State ex rel Tillman v. Jackson,* 143 Ala. 148; *City of Montgomery v. State ex rel,* 145 Ala. 471. Petitioner is acting for the state and the state is interested in the validity of all its laws, and hence, may raise the constitutionality of them.—*Morrison v. Morrison,* 3 Stew. 444; *Carlisle v. Davis,* 7 Ala. 42; 2 Enc. P. & P. 428. The Parks Bill is imperfect as an act of legislation.—36 Cyc. 491; 5 Words & Phrases, 4014; 16 N. H. 629. Every section in it relates to an election to be held except sections 10, 10½, 11 and 17, and these are not to become operative until the enactment or as the result of an election, and without further legislation, the bill would become a dead letter. The statute must be perfect in itself before

[State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners.]

it can be put in operation as a result of a submission to
a popular election.—6 A. & E. Enc. of Law, 1031; *Clark
et al. v. Jack,* 60 Ala. 271; *Dunne v. County Commis-
sioners,* 85 Ala. 148; *State ex rel. v. Ward,* 154 Ala. 123;
*Hand v. Stapleton,* 135 Ala. 156. The Parks Bill is un-
constitutional because it delegates legislative power to
the people.—*Clark v. Mobile,* 67 Ala. 217; *Cox v. Mc-
Donald,* 101 Ala. 51; Cooley's Const. Lim. 139. It is
correctly construed by sec. 94 of the Smith Bill, wherein
it is the people by their votes which authorize a sale,
and not the legislature.—6 Barr. 507; 4 Har. 479; 4 Ind.
342; Fabrickey 385; 23 Cyc. 78; *Mitchell v. State,* 134
Ala. 392; *Kelly v. Burke,* 132 Ala. 235; *Wetumpka v.
Winter,* 29 Ala. 651. It delegates legislative power by
requiring the people to determine whether the liquor
shall be sold by a dispensary, or by licensed saloons. It
is further unconstitutional because enacted on an un-
known contingency.—*Ex parte Wall,* 48 Cal. 279. The
two bills do not either separately or when taken to-
gether, authorize the sale of liquors.—*Miller v. Jones,*
80 Ala. 89; *Morgan v. State,* 81 Ala. 72; 88 Ga. 584;
80 Md. 410; 70 Mich. 396. The Parks Bill contains sub-
jects not shown by its title in that the title does not
cover section 10½.—*Lindsey v. U. S. B. & L. Ass'n,* 120
Ala. 156; *State v. O'Neal,* 79 Am. St. Rep. 456; *Morgan
v. State, supra; L. & N. v. Grant,* 153 Ala. 112; *Watson
v. State,* 140 Ala. 179; *Covington v. Thompson,* 142 Ala.
112; *Bell v. State,* 115 Ala. 87. Sec. 10½ also embraces
matter not covered by the restricted title.—*Mitchell v.
State ex rel Florence, supra; Harlan's Case,* 136 Ala.
150; *Vines v. State,* 67 Ala. 72. The Smith Bill is pred-
icated on assumed facts which do not exist.—*Yahn v.
Merritt,* 117 Ala. 485; *Morgan v. State, supra; Miller
v. Jones, supra.* The conditions of sec. 94 of the Smith
Bill cannot be satisfied, and this renders the bill ineffec-

tual.—*Carroll County v. Smith,* 28 L. R. A. 17; 3 Baxt. 264; 97 N. C. 227; 16 Lea 581; *Ex parte Owens,* 148 Ala.; *State ex rel. v. Sowell,* 143 Ala. 494. Sec. 28 of the Smith Bill is void for uncertainty. The bill is also violative of sections 1 and 77, Constitution 1901.—*McGough v. State,* 118 Ala. 159. The bill also imposes other arbitrary powers on the commission.—*Bir. Ry. Co. v. Bir. Ry. Co.,* 97 Ala. 455; 187 Ill. 587. The bill also discriminates in favor of distillers and brewers.—123 U. S. 623, 128 U. S., 1 L. Ed. 346; 184 U. S. 540. The rights conferred by section 93 of the Smith Bill upon distillers and brewers are not within the title of the act. Secs. 27 and 12 are unconstitutional. 116 U. S. 446; 97 U. S. 566; 91 U. S. 275; 103 Ill. 552. The Excise feature of the Smith Bill is unconstitutional, and fatal to the whole bill.—187 Ill. 587; *State ex rel. v. Florence,* 134 Ala. 392.

R. B. EVINS, and STEINER, CRUM & WEIL, for appellee. The "Parks Bill" is a complete enactment, notwithstanding it may contemplate future legislation.—*State v. Whaley,* 168 Ala. 152. The "Parks Bill," and the "Smith Bill" will be considered *in pari materia.* Each fully covers the subject with which it attempts to deal.— *Plumber v. Murray,* 51 Barb. 201; *People v. Aichison,* 7 How. Pr. 241. Neither the Parks Bill nor the Smith Bill, attempts to delegate *legislative* authority: (a) In that it is referred to the people to determine by their vote whether its provisions shall become operative in a given locality.—*Clark v. Jack,* 60 Ala. 271; *Jackson v. State,* 131 Ala. 271; *Dunn's Case,* 85 Ala. 144; *Williams Case,* 123 Ala. 432; *State v. Crook,* 126 Ala. 600; *Childress v. Shepherd,* 102 Ala. 385; *Davis v. State,* 144 Ala. 84; *Hand v. Stapleton,* 135 Ala. 156; *State v. Parker,* 26 Vt. 357; *Lock's Appeals,* 72 Pa. St. (13 Am.

[State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners.]

St. Rep. 716, expressly overruling the case of *Parker v. Com.,* 6 Barr. 507, cited by opposing counsel) ; *Smith v. Janesville,* 26 Wis. 291; *Alcorn v. Homer,* 58 Miss. 652; *Bull v. Head,* 11 Gratt. 78; *Broadbine v. Inhabitants, etc.,* 182 Mass. 598; *Union Bridge Co. v. United States,* 204 U. S. 364; 50 L. Ed. 523; *Chicago v. Stratton,* 162 Ill. 494; 35 L. R. A. 84; *Boyd v. Bryant,* 35 Ark. 69; 37 Am. Rep. 6; *State v. Wilcox,* 42 Conn. 364; 19 Am. Rep. 536; *Territory, etc. v. O'Conner,* 5 Dak. 394; 3 L. R. A. 355; *McClannahan v. Breeding,* 172 Ind. 457; 88 N. E. 695. (b) Nor in that the Board of Excise Commissioners is invested with the right to exercise a certain discretion in administering its provisions. "The right of the state to regulate certain occupations which may become un-safe or dangerous when unrestrained is the exercise of the police power, with a view to protect the public health and welfare, is now well settled."—*Ingraham v. State,* 39 Ala. 350; *Isenhour v. State,* 157 Ind. 517; (87 Am. St. Rep. 228) ; *State v. Thompson,* 160 Mo. 333; (54 L. R. A. 950) ; *People, ex rel. Lieberman v. Van De Carr,* 199 U. S. 552; 50 L. Ed. 305; *State v. Whaley,* 168 Ala. 152; *Sammeson v. State* (Tenn.) 95 S. W. 1012; *Port Royal Mining Co. v. Hagood,* (S. C.) 3 L. R. A. 841; *Arnett v. State, etc.,* (Ind.) 8 L. R. A. (N. S.) 1182; *Red Sea Oil Mfg. Co. v. Board of Agriculture, et al.,* 172 Fed. 695; *State v. Thompson,* (Mo.) 54 L. R. A. 950. It is presumed that public officials will discharge their duties honestly, and in accordance with the rules of law. *People of N. Y. ex rel. Lieberman v. Van De Carr, supra.* If there is no right of appeal from the acts of the Com-missioners, their conduct may nevertheless be reviewed or corrected by the writ of *mandamus.*—*Ex parte Wood-ruff,* 123 Ala. 99. The right to deal in intoxicating liquors is not a common right, but is purely a matter of grace, and a license is in no sense a contract between

the State and the licensee; it is a mere permit, revocable at pleasure.—*Powell v. State*, 69 Ala. 11; *Cresser v. Lyman*, 74 Fed. 765; 17 Am. & Eng. Enc. Law, 136-7; *Crowley v. Christenson*, 137 U. S. 86; *Mulger v. Kans.*, 123 U. S. 623; *Bartemeyer v. Iowa*, 18 Wall. 129. The Smith Bill does not offend against Section 77 of the State Constitution, providing that no state office shall be created for the measuring of any merchandise, etc. —Cases cited to proposition II (b), and *Steiner v. Ray*, 84 Ala. 83. Section 10½ of the Parks Bill is not violative of Section 45 of the present Constitution, providing that each law shall contain but one subject, which shall be clearly expressed in its title, etc.—*Griffin v. Drennen*, 145 Ala. 128; *State v. Crook*, 126 Ala. 600; *Ballentine v. Wickersham*, 75 Ala. 533; *Robinson's Case*, 69 Ala. 418; *State v. Rogers*, 107 Ala. 444; *Mitchell v. State, ex rel Florence*, 134 Ala. 404. But, if it were, its place would be supplied by Section 9 of the Smith Bill. Even though Section 10½ of the Parks Bill, and those provisions of the Smith Bill relating to the inspection of liquors, etc., are, for any reason, invalid, the remainder of the enactment is unaffected thereby.—*State v. Davis*, 130 Ala. 148; *Ex parte Cowart*, 92 Ala. 94; *Boyd v. State*, 53 Ala. 601; *Walker v. State*, 49 Ala. 329; 36 Cyc. 982. The word "majority," as used in these acts, clearly means a majority of those voting in the election. —*Ex parte Owen*, 148 Ala.; *Schlicter v. Keiter*, 156 Pa. 119; *People v. Warfield*, 20 Ill. 159; *L. & N. R. R. Co. v. Davidson County*, 33 Tenn. 637; *St. Joseph, etc. v. Rogers*, 83 Ala. U. S. 644. The word "majority," as used in Section 94 of the Smith Bill, qualifies the word "vote," following it, and not the words "qualified electors" or "votes." Statutes will not be declared unconstitutional unless their invalidity appears beyond a rational doubt.—*Sinking Fund Cases*, 99 U. S. 718; L. Ed.;

*Fletcher v. Peck,* 6 Cranch. 87; *State ex rel. Crenshaw
v. Montgomery City Com.,* Ala. (MSS.). "The legisla-
tion of the people of the State is superior and supreme in
all cases when there is no limitation imposed by the
Federal or State Constitution."—*Gunter v. Dale Coun-
ty,* 44 Ala. 639; *Dorman v. State,* 34 Ala. 216. The sale
is authorized or legalized, not by the vote of the people,
but by the Act itself.—Section 11 of the Parks Bill.
"Constitutions (statutes) are made for practical pur-
poses, and not merely for the exercise of critical gym-
nastics, and in the construction of them we are to take
into consideration the conditions which confronted the
Constitution (statute) makers, and we are, if possible,
to give the instrument such construction as will carry
out the intention of the framers, and make it reasonable
rather than absurd."—Per Mr. Justice SIMPSON, *Cov-
ington v. Thompson,* 142 Ala. 107.

McCLELLAN, J.—This proceeding in the nature of
quo warranto, instituted by the state on the relation of
W. B. Crumpton, is to test the right of Montgomery,
Hails, and Banks to occupy and exercise the powers and
privileges of "excise commissioners" and of the "excise
commission" in the county of Montgomery, state of Ala-
bama. The prayer of the petition is that the respond-
ents, Montgomery, Hails, and Banks, be required "to
show by what warrant or authority they claim the right
to hold said offices, respectively, and to exercise the
rights and powers of the excise commission, and that
on final hearing judgment be entered ousting said de-
fendants from said respective offices."

Quo warranto is, in this state, the legal, proper means
to test and determine the rights upon which the prayed
judicial power would operate.—Code, § 5453; *Montgom-
ery v. State ex rel.,* 107 Ala. 372, 18 South. 157; *Jackson
v. State ex rel.,* 143 Ala. 145, 42 South. 61.

As appears from the prayer of the petition, from the particular object of the proceeding, the questions raised are: First, are there such offices in legal existence as those to the exercise of which the respondents assert claim; and, second, if such offices legally exist, are these respondents the validly chosen incumbents thereof? The petitioner's general theory is that these offices do not legally exist, and are hence legally incapable of occupancy by respondents, because of the constitutional invalidity of the legislation to which their creation is attributed—the legislation by which the establishment of these offices purports to have been effected. The petition assumes, in averment, the task of enumerating the particulars in which this legislation violates the fundamental laws of this state and of the United States, and these objections to its validity are very numerous.

It is the established rule of this court to decline to pass upon the constitutional validity of legislative enactments, unless the determination of the questions and rights then before it requires their decision.—*Smith v. Speed,* 50 Ala. 276; *Bray v. State,* 140 Ala. 172, 179, 37 South. 250; *Hill v. Tarver,* 130 Ala. 592, 30 South. 499. It is of course a corallary of this rule, arising from the reason of the rule itself, that, where several or many constitutional questions are presented by the record, that or those *only* will be considered or determined which is or are necessary to the adjudication of the controversy. In short, this court will not decide any constitutional question respecting the validity of legislation, unless its decision thereupon is "indispensable" to the determination of that litigation. Wisdom and a just respect for the Legislature suggest and approve these rules. If, as will later appear is the partial condition on this appeal, litigants may raise upon a record any and many constitutional questions, and if, on appeal,

this court should assume the burden and obligation of response to all of them, whether decisive of the appeal or not, we should then have a process of mere interrogation of this court, and, in many instances, the determination, in the given case, of moot questions, very like, if indeed, not identical with, the procedure, in some jurisdictions, official propounding to the highest tribunal of questions affecting the validity of legislation. Favorable and prone as are the judges to respond to diligent, able, and instructive discussions of counsel of even immaterial questions presented by a record, this court cannot and will not adopt the procedure to which the stated process would lead.

Another and equally wise restriction which this court always recognizes in respect of constitutional questions, presented in opposition to presumptively valid legislation, is thus expressed in *Shchane v. Bailey,* 110 Ala. 308, 20 South. 359: "Nor will a court listen to an objection made to the constitutionality of an act of the Legislature by a party whose rights it does not specially affect. An act of the Legislature will be assumed to be valid until some one complains whose rights it invades, and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property, or his rights, that the objection of unconstitutionality can be presented and sustained."

We have taken the pains to state above the exact major grounds, two in number, upon which the ouster of these respondents is sought, with a particular view to subsequent elimination of questions argued that do not have controlling bearing upon the valid existence vel non of the office of excise commissioner, and, in sequence, upon the lawfulness vel non of the respondents' respective incumbency thereof.

When the Legislature of 1911 assembled, this state was subject to the provisions of what was commonly called the "state-wide prohibition law." The traffic in intoxicants was prohibited throughout the state. From common knowledge we know, as all do, that, through the selection by the electorate of the chief executive to take office in January, 1911, the public will was understood to be that the state should adopt the policy of "local option"—should depart from the policy of state-wide prohibition. The policy of the state therefore obtaining did not contemplate or permit the exemption, at any time or under any circumstances, of any political subdivision of the state from the operation of the state-wide prohibition of the traffic, nor, of course, did the policy comprehend as a chief factor any regulation of the traffic. With the elder policy then prevailing and the policy of local option treatment and regulation of the traffic foreshadowed, at least in degree, the Legislature entered upon the task of changing the state's statutory policy so as to vest in the electorate of the county, as a unit, the option of having the traffic restored therein, and, if to be restored, to prescribe the methods for the control of the manufacture and disposition of intoxicants. Such, to state the matter most generally, was the legislative theory and intent when the "Parks" and "Smith Bills" passed through the forms of enactment, as the petition admits. The "Parks Bill" was approved February 21, 1911.—Gen. Acts 1911, pp. 26-31. The "Smith Bill" was approved April 6, 1911.—Gen. Acts 1911, pp. 249-288. Reference to them, in this opinion, by these commonly-accepted designations will be continued.

For the purpose of a general understanding and statement of the respective objects of these enactments, it will suffice to quote at this point their respective titles: Parks Bill: "An act to submit to the qualified electors

[State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners.]

of each of the counties in this state the question of whether or not the manufacture and sale of spirituous, vinous or malt liquors shall be legalized therein; and whether or not such liquors shall be sold by dispensaries or by private dealers under a license." Smith Bill: "An act to regulate the manufacture, sale and other disposition of spirituous, vinous and malt liquors in the incorporated towns and cities in the state of Alabama whenever such manufacture, sale or other disposition is authorized at and by an election by the qualified electors of the county in which such town or city is situated, for determining in and by such elections whether the sale of such liquors shall be by dispensary or by private dealers under license; to regulate the establishment and operation of such dispensaries as may be so authorized; to provide for the creation of an excise commission in such cities or towns in which the manufacture and sale of said liquors are authorized as herein provided; to prescribe the power and duties of such excise commission wherein the manufacture and sale of said liquors under license is authorized as herein provided; to prescribe the amount of license taxes to be paid by each licensee and the respective portions of the net revenue of each dispensary to be paid, respectively to the state, city or town operating the same, and the county in which the same is operated; to require a bond of each licensee and prescribe its office, purpose and liabilities; to prohibit the manufacture, sale, barter, exchange or giving away to induce trade of said liquors, or any other intoxicating liquors or beverages in the state of Alabama, except as authorized by this act, and under a license obtained and held as in this act provided and to make unlawful and to prescribe penalties and punishment for all violations of this act."

[State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners.]

It appears that the Legislature separated into two enactments the conditional restoration and regulation, if restored, of the traffic (including, for convenience, in the term the manufacture as well) to the counties of the state. In the first—the Parks Bill—the question of choice of the electorate whether the traffic (including manufacture) should prevail in the county was the general legislative intent, and, if so, then, secondarily, whether the sales should be conducted through the means of the license system or of dispensaries. In the second—the Smith Bill—the regulation of the manufacture and sale, if such was the choice of the electorate, was the general legislative intent; the restrictions and requirements of the regulation being suited to the methods of sales the electorate preferred. This latter enactment has 94 sections evincing throughout a purpose to deal with the subject in a particular, as well as a comprehensive, way. It is in the Smith Bill, as was to be expected from the division in enactment of the subject adopted by the Legislature, that the offices of excise commissioners and the board of excise commissioners were, in the event of the restoral, by the ballot, of the manufacture and sale of liquors, created and the incumbency thereof provided for, and the duties, powers, and privileges thereof were established.

Both of these enactments purposed treatment of one general subject, viz., the manufacture and sale of intoxicants, though in legislative judgment the effectuation of this intent was thought the better to be conserved by employing for the expression thereof two enactments as stated. That this division was rational, was naturally practicable, was not inhibited by any provision of the organic law, cannot be subject to the least doubt. The basic line between the two acts was choice by the electorate in the first, and regulation of the new

order which, upon the contingency provided, should be installed in the second. If the ballot contemplated in the first act was unfavorable to the restoral of the manufacture and sale in the county voting upon the issue, nothing was left upon which to visit, in that county, the regulatory provisions of the second act. This, alone, was sufficient to suggest the division of the general subject, as, in fact, did prevail.

Passed as these acts were at the same session, treating, as they purport to do, one general subject of legislative policy, related, as they are, to each other, as cause to effect, referring as did the former to that to follow, it is hardly necessary to say that these acts must be considered and construed as in pari materia.

We will now take up for consideration those constitutional objections to the legislation assailed which, if sustained, would affect the result on this appeal.

It is first insisted that the Parks Bill was imperfect as an act of legislation. In section 17 thereof it is provided: "That the provisions of this act shall not become effective until there shall be hereafter provided by law, regulations and restrictions for the conduct of dispensaries and for the issuance of license to private dealers, for the manufacture or sale of said liquors." The office and effect of this section was to suspend the going into operation of the Parks Bill until a clearly stipulated contingency should happen. The abstract power of the Legislature to so order with respect to an act's suspension, operation, or effect is too well settled in this state to admit of any doubt. It has been repeatedly affirmed where the contingency was to be afforded outside of the Legislature. Certainly, as an abstract matter, the Legislature may hinge the going into operation of its own pronouncement upon a contingency which its own act must afford, if so it is afforded. But

the argument is that the provision of section 17 operated, in connection with other provisions referring to then unenacted regulations and restrictions, to render the act incomplete. The Parks Bill was a complete enactment in all that it purported to effect, viz., an election upon defined issues, and the declaration, as law, of the consequence to thereupon, in certain events, ensue. Section 17 did nothing save to suspend—to postpone— the operation of that act until the hand that made it made the rules for the control of the consequences to, in certain events, follow, viz., the manufacture of liquors and the methods of sale in the county voting. The reference in several places therein, aside from section 17, to the regulatory act obviously took nothing from the affirmative legislation expressed in the Parks Bill. Had they been omitted, the general purpose of that act would not have been impaired. Such reference taken, care and comprehension in respect of regulation and control of a condition, which that act contemplated, would be created by an election thereunder.

It is to be readily conceded that without *other* legislation the Parks Bill was of no effect; but this result would have come, *not from the incompleteness of the law,* but from the affirmative restriction its electors placed upon its going *into effect.* The distinction between an abortive effort at legislation and an enactment that is not *operative,* because restrained by an unafforded contingency, is clear and obviously well founded. It is present in all cases where laws, validly enacted, are suspended or their operation postponed. The Parks Bill was, pending the enactment of the Smith Bill, and is, a complete law. The objection, on this account, is not tenable.

The local option election in Montgomery county was held subsequent to the approval of the Smith Bill April

6, 1911. Accordingly, if the Smith Bill afforded the contingency whereupon it was provided by section 17 of the Parks Bill that the Parks Bill should become operative, the issues submitted to the electorate, as prescribed by the Parks Bill, were issues formed under perfected legislation. These related laws, if not subject to other objections taken to them, relegated to the electorate no power of legislation, but only and solely the *choice* of acceptance of a perfected system which should alter the policy then prevailing in the voting county. We shall have occasion to recur to this subject in the progress of this opinion, which is following as near as may be the order of argument in briefs for appellant.

It is urged that the Parks Bill and the Smith Bill delegate to the people legislative power, because they hinge the issuance of license to sell liquors and the establishment of dispensaries, according to the preference of the electorate, upon the *authorization or legislation* of the sale thereof by the vote of the people. In short, the contention is that the vote of the people, *and not the law*, authorizes—legalizes—the sale. We would prefer, out of deference to counsel, to find in this contention something more than a mere play upon words, but we are unable to do so. The italicized terms must be referred to the legislative purpose, to be read from these intimately related laws. The issues submitted to the electorate and the unequivocal provision for the consequence of a choice, by the electorate, favorable to the restoral of the manufacture and traffic to the county voting thereon, demonstrate that no legislative power, no commission of the electorate to make law, was intended or effected. All the electorate can do under these laws (as respects the displacement of an existing order of things when the election is held) *is to choose* whether to pass their county under the laws already

then written. No court could, under acts employing, as these do, the terms discussed, possibly attain any other conclusion. The context and purpose'of the acts thus determine, as is often the case, the import of the terms.

It is next insisted that the Parks Bill is invalid because it delegates legislative power to the people in this: That a choice between the license system and the dispensary system is accorded the electorate. Both of these systems are provided for in the regulatory (Smith Bill) law. The argument is that such a choice of systems is an undelegable matter of legislative power. It is difficult to discover upon what reason, inviting distinction, this conferring of choice upon the electorate could be held to be unauthorized, invalid, and the major choice between *prohibition* of the liquor traffic and the licensing thereof could be held valid. If one is valid, the other must be also. If one is void, the other must be also. There is nothing in the choice between the systems, each provided for operation if accepted by the electorate, that savors of allowing the electorate to make law or to supplement a law. The law is already written. The choice alone is: Which shall prevail in the county of the electorate, the one system or the other? No satisfying argument, and no authority in point, is presented for this contention. Our own consideration of this insistence has not discovered any reason to approve it.

It is next urged that the Parks Bill is invalid because enacted upon an unknown contingency. This is refuted by the express language of section 17. The contingency prescribed is shown to be fully known and definitely described. Its sole effect was upon the going into operation of the law, not upon its enactment. It is further contended that neither, nor both, of the laws under re-

view authorize the sale of liquors. This objection is also plainly refuted by both the laws, in numberless places, as well as by their whole theory and general purposes.

The next insistence is that the Parks Bill contains three subjects, viz., the holding of an election, prohibition except in cities and towns, and deferring its going into effect to await future legislation. Manifestly the mere postponement or fixing, in futuro, *of the time of going into effect* of an enactment is not, in any sense, a part of the *subject* of the act within section 45 of the Constitution.

In *Lindsay v. United States Savings Association,* 120 Ala. 156, 24 South. 171, 42 L. R. A. 783, cited for appellant, the court was treating an *expository* act, and an act that was expressly, in its body, intended to have a retroactive operation to affect, in a confirmatory way, past transactions. It was condemned on other grounds as well as that its title gave no intimation of its retroactive effect. There the effectiveness of the act upon past transactions necessarily was of its subject—of its substance—while here the restraint of effectiveness, hinged for force upon a defined contingency, was upon its efficacy, its operation, as a law; and that as a governing instrument upon future conduct and action.

Section 10½ of the Parks Bill is as follows: "The sale of spirituous, vinous, malt and other intoxicating drinks and beverages enumerated in this bill, shall not be permitted outside the corporate limits of cities or towns, nor shall the sale of such drinks and beverages be permitted in any town which has not at least one policeman or marshal continually employed." We have already set out the title of this act. We do not construe the section as establishing or retaining prohibition in a county outside of municipalities of a defined police protection. This section merely confined the place or

places *in the county* whereat the traffic could be carried on.   The sale of liquors is legalized *in the county,* within the title of the act, whenever the sale may be lawfully made in a defined place or places therein.   The effect of this section was to qualify the area or place of operation of the traffic if the electorate preferred the restoral of the traffic *in the county.*   In other words, it was a limitation or qualification of one of the issues provided by the bill to be submitted to the electorate.   In that view it is germane to the subject clearly expressed in the title. In a sense it may be said to be a regulation, a matter without the title; but, in the broader sense of reference to and effect upon one of the issues submitted to the electorate, it is a part thereof, just as if its substance was read or written into section 6 of the Parks Bill immediately succeeding the word "permitted" in the fifth line from the beginning of the section.   Unquestionably the legislative purpose was to assure the elector that, in his county, the traffic, if restored, would be only where wisdom and experience, often governmentally recognized, suggests, namely, where police protection is continually afforded.

It is further contended that the provision with respect to the description of the municipality in which sales may be authorized, viz., municipalities continually employing at least one police officer, effects to subject the operation and effectiveness of the law to the whim of the governing body of each municipality in an unrestricted power of discharging or employing a police officer or officers therein.   *Mitchell v. State ex rel. Florence Dispensary,* 134 Ala. 392, 32 South. 687, is relied on as authority for this contention.   The act condemned in that decision created a penniless corporation to carry on a dispensary for the sale of intoxicants, and undertook to expressly vest in the governing body thereof a

discretion whether the dispensary should be operated and, if so, when it should cease operation; the consequence being that the laws *prohibitory* of the sale of intoxicants were made to depend for effect upon the discretion of the non-governmental corporate body in operating the dispensary provided for. It was ruled that such a process was an abortive effort to vest in that corporation legislative power—a discretionary power to determine the suspension of a law. Section 10½ presents a very different status. In this state the power and authority to engage policemen and to afford police protection in municipalities is vested in the governmental authorities thereof, not in any merely corporate creation of legislative enactment. It is never doubted that such commission to preserve and promote order and peace in the towns and cities of the state is a valid delegation of the state's authority to its municipal creature. To these agencies of, essentially, governmental nature and creation, a vast local authority may be and is lawfully delegated by the state. If the powers condemned in the Florence Dispensary decision had been committed to the governmental authorities of the municipality, and the decision had ruled the legislative effort invalid, we might then have a status somewhat akin to that under consideration.

This section established a condition by which the application of the law, in any event, depended. No *discretion* with respect to the laying of a law upon the town, city, or county is thereby vested, even in the municipal governing body. That such a body may remove the *condition* upon which depends the law's control and application within that municipality is of course evident. Such action is not expressive of a vested *discretion* to suspend the law or to shift, as whim may suggest, the governmental control from one law to another, but is

only and solely the exercise of a power to afford or not the *condition,* the *status* which given, made, or created draws upon it certain definite consequences binding as law does bind. Such was the principle underlying and controlling the decision in *Whaley's Appeal,* 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499. There a penal statute condemned the violation, fraudulently or willfully and knowingly, of rules of street car companies engaged in the carriage of passengers. It was contended that the abolition by the carrier of rules already made, or the failure of the carrier to make rules, effected to clothe the carrier with legislative power—with power to make or to suspend a law. The court replied: "The fact that the rules may be changed or suspended is no delegation of authority to make, change, or suspend the law, *but merely relates to the subject upon which the law operates.*" (Italics supplied.) The written laws abound in illustrations of this principle. Every law presupposes a status upon which to have its effect. It is necessary that every law define the subject of its operation. That that subject may depend for *existence* upon the will of one or more, or upon a contingency even, does not commit the law, but *only* its application, to the control of the influences that may make or afford the *condition—status—*upon which it will operate. An illustration is found in laws in which their application is made to depend upon the population of municipalities, if of one class in population, to be governed by one law, if of another, by another law. It is readily conceivable that in such event enough of the population might voluntarily remove to place the municipality in another class, or, through lawful methods, the area of a municipality might be so contracted as to reduce the population to a number within another class of municipalities, subject to different provisions of law. Certain-

ly, in such cases, it would not, could not, be soundly insisted that there was delegation of legislative power to make or change or suspend a law. The only effect of the action supposed in the illustration would be a change of a condition, a status, upon which the law operated. There is no merit in the contention that the police provision of section 10½, or that section as a whole, delegates any legislative power whatever.

In section 94 of the Smith Bill this is written: "Provided, that no license shall issue and no dispensary shall be established in any incorporated town or city in this state unless the manufacture, sale or other disposition of spirituous, vinous, or malt liquor is authorized by a majority vote of the qualified voters of the county in which such towns or cities are located." The Parks Bill provides for an election on the issue of manufacture and sale only. It is urged for appellant that the condition upon which the issuance of license and the establishment of a dispensary is made to depend cannot be and has not been met in the county of Montgomery for that the issue submitted to the electorate did not comprehend "or other disposition" of intoxicants.—*Yahn v. Merritt,* 117 Ala. 485, 23 South. 71; *Morgan v. State,* 81 Ala. 72, 1 South. 472, and *Miller v. Jones,* 80 Ala. 89, are cited as sustaining the contention. These decisions dealt with the question whether certain acts, in respect of the liquor traffic provided for in the body of the act, were within the title. Here the proposition of the appellant is radically different. It is that the condition is single, and, to comply with it, each and all of the disjunctively stated elements should have been comprehended in the issue submitted to the electorate. We do not so understand the provision. It is clear to our minds that, so far as the quoted restraint upon the issuance of licenses and the establishment of dispensaries is

concerned, a compliance therewith, in the election contemplated, is had when the manufacture *or* sale is the subject of the ballot. We cannot assume that the elements described are or should be conjoined. They are written disjunctively, and we must so treat them.

Again it is contended for appellant that, under the pertinent provision of section 94, as quoted, the requisite number of votes to establish the result in favor of the traffic is a *majority of the qualified voters of the county*. Much of argument is pressed to support this view. It has been carefully weighed. If it is granted that the phrase "majority vote of the qualified voters" means, when taken alone, a majority of the qualified voters of the county at the time the election is held, that meaning cannot be accepted when the whole of the legislation in which the expression occurs is considered, as must be done consistent with the rules prevailing with respect to enactments in pari materia. It will suffice to point out that, in the sections 10 and 11 of the Parks Bill, the results on the issues submitted are expressly made to depend upon the *majority of the votes cast,* not on the majority, in the affirmative, of the qualified voters of the county. Hence, if that provision of section 94 of the Smith Bill should be interpreted as appellant contends, a conflict between it and the pertinent provisions of the Parks Bill would be instituted. It is our duty to avert that consequence. It is not to be supposed the Legislature intended to incorporate inconsistent provisions in these intimately related laws, nor that the efficacy, in any event, of the laws should depend upon a measure of electoral concurrence that is not provided for in any way, but which, on the contrary, is contemplated in a particularly prescribed measure, less in degree only. We therefore interpret that provision of section 94 as consisting with sections 10 and 11 of the Parks Bill.

It is further objected that that feature of the Smith Bill, § 27, providing for the analysis, and, if impure and being sold in violation of the act, the condemnation, by the Excise Commission of liquors, is infractive of section 77 of the Constitution, which reads: "No state office shall be continued or created for the inspection or measuring of any merchandise, manufacture or commodity, but any county or municipality may appoint such officers when authorized by law."

It was ruled in *State v. McGough,* 118 Ala. 159, 24 South. 395, that the purpose of the section was to forbid, as it says, the creation or continuance of a state office for the inspection, etc., of merchandise, etc., saving to the lawmakers the power to provide therefor through the county and municipal organisms. It is the office, for the object specified, against which the section is directed. The construction taken on McGough's appeal must be accepted. This section of the organic law has been reordained without change.

In *McGough's appeal* the act assailed provided *alone* for the inspection of commodities by a state officer, and to effect the major purpose restrained sales *before* inspection and also of the commodities not conforming to the test prescribed. It is seen that the sole motive for that enactment was inspection, and that its accomplishment was sought through a state officer, with subordinates in the districts of the state, upon whom no other duty was placed by the act.

In the Smith Bill the duty of *analysis* and condemnation for imperfection is but one of a great number imposed upon the excise commission. This duty is relatively incidental. If it had been omitted, the excise commission would still have had important duties for its performance. Accepting the McGough decision as fully as it may be, we do not think section 77 intends,

nor does that decision so hold, to prescribe that no duty of inspection can be laid upon or created for a state officer upon whom there rests the performance of substantial functions and obligations independent of an inspection, etc., of merchandise or commodities, who has for his service other substantial duties which render justifiable or commendable the continuance or creation of his office. Such, for instance, is the state office of commissioner of agriculture and industries, upon which the duty of inspection of fertilizers, food products, etc., is imposed.—*Steiner v. Ray,* 84 Ala. 93, 4 South. 172, 5 Am. St. Rep. 332. The just effect and purpose of section 77 is obviously not impaired or opposed when the *sole excuse* for the continuance or creation of the state office is not the object it expressly describes. Indeed, it is not conceivable that the makers of the Constitution intended section 77 to read or be understood as providing that *no duty to inspect or measure* any merchandise, etc., *should be laid upon a state officer,* which would be the effect if the section is applied to the office of excise commissioner or to the excise commission. The objection is untenable, even if it be assumed, for the occasion only, that the office in question is a state office—a matter upon which well-founded doubt, at least, may exist.

Again it is contended for appellant that the Smith Bill is unconstitutional for that it confers upon the excise commission unwarranted powers. Some of these powers of which appellant complains are: (a) That the issuance of licenses to applicants, where they exceed the limit prescribed therefor, are committed to the unfettered discretion of the excise commission; (b) that contests of applications for licenses are submitted for determination to the discretion of the excise commission, and the decision thereof is made final; (c) that the powers to transfer or suspend licenses are also so com-

mitted to the excise commission; (d) that the excise commission is vested with the power to hear and determine the issues whether a licensee has violated the provisions of the act, and, if so advised, to suspend or revoke his or its license; (e) and that, in the absence of provision to the contrary, it is, under the Smith Bill, possible for the excise commission to defeat the law, notwithstanding its electoral acceptance by a county, and to retain prohibition of the traffic therein by simply declining to issue licenses to sell under that system, if accepted by the electorate. None of these objections are well founded.

It is universally recognized that the act of engaging in the sale of intoxicants may be wholly forbidden, and that a license to engage in the traffic in liquors is a privilege merely, revocable at the will of the superior granting power; that there is in it no element of property right or vested interest of any kind. Being so, it may be a necessary consequence that rules of law, protective of vested rights, are without influence in respect of such a privilege. It would seem to be axiomatic that even one who is, as he conceives, wrongfully denied participation in a matter of *mere* privilege, or who is discriminated against in his effort or desire to enjoy that privilege with another no better entitled, has no firm basis of complaint, unless the law of the creation of the privilege and governing the selection of its beneficiaries brings him within its protection and should and does control the authority to which the selection is committed. In other words, it would seem that the selection of the beneficiaries of a mere privilege, not involving a matter of right, may be committed to the discretion of a body created for that purpose, and so, without impinging upon any vested right of one who desired to enjoy the privilege, or, from whom it was, in the discretion of the body,

withdrawn. Whether the principles which many courts have approved with respect to the regulation of the conduct of businesses—more innocent in very nature than, and of a different category from, the traffic in intoxicants—are applicable to the authorized traffic in intoxicants in such sort as to furnish relief against, or to forbid in enactment, the investment of a board with a pure discretion in the selection of those who may enjoy the privilege, is a question of interest and may, upon another occasion, become important. The principles involved, though not therein applied to the traffic in intoxicants, may be found stated in *Lieberman v. Van De Carr*, 199 U. S. 552, 26 Sup. Ct. 144, 50 L. Ed. 305, and cases cited therein. See, contra, *Noel v. People*, 187 Ill. 587, 58 N. E. 616, 52 L. R. A. 287, 79 Am. St. Rep. 238. We merely moot this question.

In section 8 of the Smith Bill it is provided: "It shall be the duty of said commission to order the issuance of licenses to all applicants who possess the requisite qualifications hereinafter provided by law, for the manufacture or sale of spirituous, vinous and malt liquors, not exceeding as to retail licenses the number herein provided for in each city or town, and the authority to order the issuance of licenses shall be vested exclusively in said commission." By section 9 the qualifications mentioned in section 8 are provided in this way: That the applicant shall present to the commission a recommendation in writing, signed by 20 householders and freeholders who are qualified voters of the city or town in which the applicant proposes to engage in the sale or manufacture, stating that they know the applicant; that he is of good moral character; that he has been a resident of Alabama for six months preceding; that he is in all respects a proper person to be licensed; among other things. Where there is application to

transfer a license (section 15) already issued, the transferee shall have the qualifications before indicated. Section 15 also makes provision for a contest of a proposed transfer of person, or place, of the license, and commits the determination thereof to the *judgment* of the commission.

It cannot, will not, be presumed that the officers or body charged as excise commissioners and the excise commission are, by the charter of their creation, will refuse to administer the law, or by subterfuge will undertake to defeat the operation of the law.—*Lieberman v. Van De Carr, supra.* If, in fact, that condition, never to be anticipated, later appears, the fault could only be in the personnel of the officers, not in the law.

The Legislature cannot delegate its power to make, alter, or suspend a law. This is the sound and well-nigh universally accepted doctrine embracing a vital distinction with respect to the oft-recurring question whether there has been, in a given instance, an unwarranted delegation of legislative power: "The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."—*Railroad Co. v. Commissioners,* 1 Ohio St. 77, 88. It is supported by these, among other adjudications: *Port Royal Mining Co. v. Hagood,* 30 S. C. 525, 9 S. E. 686, 3 L .R. A. 841; *State v. Thompson,* 160 Mo. 333, 60 S. W. 1077; 54 L. R. A. 950, 83 Am. St. Rep. 468; *Dastervignes v. United States,* 122 Fed. 33, 58 C. C. A. 346; *Isenhour v. State,* 157 Ind. 521, 62 N. E. 40, 87 Am. St. Rep. 228; *Locke's Appeal,* 72 Pa. 491, 13 Am. Rep. 716; *Lieberman v. Van De Carr, supra; State v. Barringer,* 110 N. C 525, 14 S. E. 781.

A discretion of selection may be vested in an *administrative* body, as is here done, to promote or effectuate the execution of the law; and such a body is, as was held in principle in *Ingram v. State,* 39 Ala. 247, 84 Am. Dec. 782, only a legislative agent, an *administrative* instrument. In that case the Legislature committed to the Governor the powers to make rules governing the conversion of grain into distilled liquors. The act was assailed on the ground of unwarranted delegation of legislative power. The response was that the Governor was constituted an agent to effect the legislative purpose; that the act in that particular was valid. The principle illustrated there applies here. The excise commission is an administrative instrument—a legislative agent—to which no power of legislation but only of administration is committed.

We think this disposes of every question raised and argued for appellant that could by any possibility affect the valid existence vel non of the offices held by respondents or the body which, when assembled, they constitute. They are resolved, as appears, in favor of the validity of the acts assailed.

At an earlier point in the opinion we alluded to the established practice and rule to decline the decision of constitutional questions that would not, however decided, determine the appeal. In section 38 of the Smith Bill it is provided: "That if any section or provision of this act be held void or unconstitutional, it shall not affect or destroy the validity or constitutionality of any other section or provision hereof which is not of itself void or unconstitutional." The Constitution of 1901 contains, at section 196, similar provisions with respect to the article entitled "Suffrage and Elections." Of what effect are the provisions of section 38? An enactment may be valid in part and invalid in part, and the

general rule is that, if the valid and invalid parts are independent of each other, separable, and the valid competent to stand without the invalid, leaving an enactment sensible and capable of being executed, the valid parts will survive and the invalid will be stricken.—*Powell v. State,* 69 Ala. 10; *Doe ex dem. Davis v. Minge,* 56 Ala. 121; *State v. Davis,* 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23; 36 Cyc. pp. 976-978. It is also to be said, in the nature of limitation of the rule stated, that the whole statute will be stricken if the valid and invalid parts are so connected and interdependent in subject-matter, meaning, and purpose that it cannot be presumed that the Legislature would have passed the one without the other, or where the striking of the invalid would cause results not contemplated or intended by the lawmakers, or where that invalid is the consideration or inducement of the whole act, or where the valid parts are ineffective and unenforceable in themselves, according to the legislative intent.—Author, supra.

It is of course not within legislative competency to bind the courts by any declaration or pronouncement in their unfettered functions of determining the constitutional validity of enactments. Yet we do not doubt that it is within legislative competency to remove, by express assertion in the act, any uncertainty, in the judicial mind, as to what the Legislature would have done in respect of the adoption of the act, with the invalid parts thereof stricken, before passage, therefrom. Whether, after accepting such legislative assertion that it would have passed the act with the invalid stricken, that remaining is valid, surviving the operation of the cutting off of the invalid, we think would still be a question of separability, of vigor, and effectiveness to stand without the aid of that so stricken, etc., within the rule and limitations before stated *in those particulars.* In short, such

an expression in an enactment serves only to render certain the legislative intent with respect *to passage* of the valid parts, notwithstanding the invalid, and does not avail to clothe the valid with immunity from the invalidating effect the law gives the inseparable blending of the bad with the good. If the expression were given other or greater effect, the result would be to sanction legislative restraint of the judicial power in the performance of the unimpairable duty of interpreting and of enforcing, when properly invoked to do so, the mandates and requirements of the Constitution.

The bases for the propositions to follow, pressed in briefs for appellant, fall within the category in mind— the provisions thus assailed being wholly separable from, independent of, the valid parts of the legislation— and, if these are invalid for any reason (a matter we do not affirm or intimate in any degree), their striking down would not affect the provisions creative of the offices in question or of the body which the incumbents compose. They are these: That section 28 of the Smith Bill is invalid for uncertainty; that it discriminates between distillers and brewers; that the rights or privileges conferred upon distillers and brewers are not within the title of the act; that section 27 is void; and that section 12 is void.

Our conclusion is that the Parks and Smith Bills are not subject to the objections urged for appellant, and which we have considered and decided on this appeal. This conclusion coincides with that reached and pronounced by the trial court, with the exception that he ruled section 10½ of the Parks Bill to be invalid and so struck it from the act. Our view is that section 10½ is not invalid, but that it is a valid part of that act.

Accordingly the judgment appealed from is affirmed.

Affirmed. All the Justices concur.