190 So. 906

## In re OPINION OF THE JUSTICES.

### No. 57.

Supreme Court of Alabama.

Aug. 31, 1939.

Senate Resolution No. 105
By Mr. DeVane.

Whereas, House Bill No. 125 by Mr. Norman of Bullock has passed the House of Representatives and has received its first reading in the Senate, and has been referred to the Committee on the Judiciary, and

Whereas, in the opinion of certain members of the Senate, there is grave doubt about the constitutionality of said bill or some of its provisions;

Now, therefore, be it resolved by the Senate of Alabama that the Justices of the Supreme Court of Alabama be and the same are hereby requested, under Section 10290 of the Code of Alabama, 1923, to answer the following important constitutional questions in regard to said bill, a copy of which bill is hereto attached and made a part hereof:

1. Would the provisions of said bill, if enacted into law, offend Subsection 23 of Section 104 of the Constitution of Alabama?

2. Would the provisions of Section 15 of said bill, if enacted into law, offend Subsection 23 of Section 104 of the Constitution of Alabama?

3. Would the provisions of Section 15 of said bill, if enacted into law, offend the Constitution of Alabama as being an unauthorized delegation of legislative power to the people?

4. If your answer to questions numbered two or three is in the affirmative, would the other provisions of the bill, if enacted into law, be constitutional and valid, the unconstitutionality of the provisions of said Section 15 thereof to the contrary notwithstanding?

The title of the bill attached to the Senate resolution is as follows:

A Bill to Be Entitled An Act To provide a Local Option Stock Law for the State of Alabama with the county as the unit; to provide local option elections to be held in any county to determine whether it shall be lawful for cows, calves, yearlings, oxen and bulls to go at large in any such county; to provide that this act shall be designated and cited as "The Local Option Stock Law for the State of Alabama with the County as the unit;" to make it unlawful for live-stock or other animals to run at large upon the premises of another or on the public lands, roads, highways or streets in the State of Alabama; to make the owner thereof liable for damages done by such live-stock or animals; to provide for the taking up of such live-stock or animals by the owner or person in possession of any land so trespassed upon, or an agent of such parties or by any member of the State Highway Patrol, the Sheriff and his deputies of any county, the constable of any precinct, or any law enforcement officer of any municipality, and for

the payment of certain fees in connection therewith; to provide for notice to the owner of any live-stock or animals taken up if such owner be known; to provide for proceedings before justices of the peace, mayors, or recorder's court in reference to the taking up of such live-stock or animals and for the payment of costs incurred in such suits; to provide also for the ascertainment and payment of damages to property caused by live-stock or animals unlawfully at large, and orders or judgments to be made in connection therewith, and for the enforcement thereof, and to provide for appeals to be taken from any judgment rendered by any justice of the peace, mayor or recorder under the provisions of this Act to the Circuit Court, or other court of like jurisdiction; to provide that in counties or municipalities where live-stock or animal pounds are maintained, any person or officer seizing any live-stock or animal may deliver such live-stock or animal so seized to the poundkeeper for safekeeping; to provide that the owner of any live-stock or animal seized under the provisions of this enactment may make bond for the recovery of the live-stock or animal; to provide further for the sale of such live-stock or animal after the ascertainment of damages; to define and limit the term "live-stock" or "animal"; to define "open range county" and "stock law county" and to provide that no liability shall attach to any owner or operator of any vehicle of any kind who may injure or kill in either "open range" or "stock law" counties any horse, mare, mule, jack, jenny, colt, cow, calf, yearling, bull, oxen, sheep, goat, lamb, kid, hog, shoat or pig, while at large on any public highway; and to repeal all laws, general, special, local, and private, and parts of laws in conflict herewith.

The following is section 15 of the bill:

Section 15. On and after November 1, 1940, it shall be unlawful for horses, mares, mules, jacks, jennies, colts, cows, calves, yearlings, bulls, oxen, sheep, goats, lambs, kids, hogs, shoats and pigs to go at large in any county of the State of Alabama. An election may be held, however, in the manner hereinafter prescribed in any county in the State of Alabama after the passage of this enactment and its approval by the Governor to determine the sentiment of the voters of each such county as to whether cows, calves, yearlings, oxen, and bulls may go at large in each such county. Upon a petition of 25% of the number of qualified electors voting in such county in the last preceding general election being filed with the Probate Judge of any county, the said Probate Judge of such county must call an election to determine the sentiment of the people as to whether or not cows, calves, yearlings, oxen, and bulls may go at large in said county. The first said election for the determination of this question may be held in any county in May, 1940, at the same time that primary elections are held to determine the nominees of any party, but no such election may be held prior thereto. The officers appointed to hold any such election shall be those appointed to conduct the primary election of any party electing its nominees in May, 1940, as aforesaid. Subject to the above limitations, said election, or any election held under the terms of this enactment, shall be held within not less than 30 days nor more than 45 days from the date of filing said petition, and notice thereof shall be given by the Probate Judge by publication at least three weeks before the date of said election in a newspaper published in such county, or, if there be none, by posting such notice at the Court House door of said county, apprising the voters of the county that an election will be held in the several precincts thereof to determine whether such county shall be controlled in its entirety by this enactment or whether in such county cows, calves, yearlings, oxen and bulls may be permitted to go at large. The cost of the publication of notice and the cost of said election shall be paid out of the general funds of the county. On the ballot to be used for such election the question shall be in the following form: "Do you oppose the running at large within this county of cows, calves, yearlings, bulls and oxen, in accordance with the provisions of the Local Option Stock Law for the State of Alabama with the County as the unit? Yes...... No......". Only qualified electors shall vote in said election. If a majority of the electors voting in said election vote "Yes" then it shall be unlawful for cows, calves, yearlings, oxen and bulls to run at large in said county until said county shall in a subsequent election held under this Act indicate that it wishes cows, calves, yearlings, oxen and bulls to go at large. If a majority of the electors voting in said election vote "No", said county shall be an "Open Range County" under the terms of this Act until it

shall, by a subsequent election held under this Act, vote that it shall be unlawful for cows, calves, yearlings, bulls and oxen to go at large in said county. Said elections in said counties may be held as hereinabove indicated in the primary of May, 1940, or at any time thereafter, and after one such election there can be no other election for such purpose held in such county within two years, and thereafter no additional election may be held within two years from the date of the last prior election.

For the purpose of this Act, the term "Stock Law County" shall mean any county which does not vote "Open Range", and the term "Open Range County" shall be understood to mean any County which by a majority of those voting, may direct that it shall be lawful for cows, calves, yearlings, oxen and bulls to go at large in such county.

In all "Open Range Counties" or "Stock Law Counties" as herein defined, if any horse, mare, mule, jack, jenny, colt, cow, calf, yearling, bull, oxen, sheep, goat, lamb, kid, hog, shoat, or pig be injured or killed while at large on any public highway, no liability for the injury to or death of such animal shall attach to the owner or operator of any vehicle of any kind causing the injury or death, unless it be shown that such injury or death was the result of wilful or wanton conduct of the operator of the vehicle.

To the Honorable Senate
State of Alabama
Montgomery, Alabama
Gentlemen:

In reply to Senate Resolution No. 105, by Mr. DeVane, will say:

1. The proposed statute is applicable throughout the State; and is, therefore, a general law, and does not offend Subsection 23, Section 104 of the Constitution.

2. Section 15, providing for an election to determine whether cattle shall be allowed to run at large in a particular county, applies to every county in the State. This section is not violative of Subsection 23, Section 104 of the Constitution. State v. Burchfield, 218 Ala. 8, 117 So. 483.

3. Section 15 is not a delegation of legislative power within the meaning of the Constitution. A referendum to determine whether a police regulation shall be in force in a given county is not a delegation of legislative power in violation of the Constitution. State ex rel. Crumpton v. Montgomery et al., 177 Ala. 212, 213, 59 So. 294; Dunn v. Court of County Revenues of Wilcox, 85 Ala. 144, 4 So. 661; Davis v. State, 141 Ala. 84, 37 So. 454, 109 Am.St.Rep. 19.

Respectfully submitted,

JOHN C. ANDERSON
Chief Justice
LUCIEN D. GARDNER
WILLIAM H. THOMAS
VIRGIL BOULDIN
JOEL B. BROWN
Associate Justices